419 So.2d 1216 (1982)
STATE of Louisiana
v.
Anthony J. MART.
No. 81-KA-2624.
Supreme Court of Louisiana.
June 21, 1982.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Louise S. Korns and William R. Campbell, Jr., Asst. Dist. Attys., for plaintiff-appellee.
Numa Bertel and Dwight Doskey, New Orleans, Orleans Indigent Defender Program, for defendant-appellant.
LEMMON, Justice.[*]
In this appeal from a conviction of second degree murder, defendant principally contends that the state's evidence was insufficient, that the trial court erred in refusing to grant a mistrial following the prosecutor's closing argument reference to the possibility of a pardon, and that the trial court failed to instruct the jury properly as to the elements of the responsive offense of manslaughter.[1]

*1217 I.
After consuming a large amount of beer at a bar during the course of an evening and while apparently in a bellicose mood, defendant got his "drinking buddy" to drive him to his brother-in-law's home, where defendant shattered a front window with a shotgun blast.[2] As defendant and his companion were heading back to the bar, they observed on the street two black men who were total strangers. For reasons not entirely clear, defendant told his companion (the driver) to turn around and stop. He reloaded his shotgun and got out of the car. With the weapon resting on the roof of the car, defendant fired one shot toward the pedestrians. Although defendant contended later that he intended only to scare the men by shooting birdshot over their heads, the pellets struck the victim in the shoulder and the heart, killing him.
Shortly thereafter, defendant was apprehended, and he was eventually indicted for second degree murder. His companion cooperated with the authorities and testified against defendant.
Defendant's first conviction was reversed by this court. State v. Mart, 352 So.2d 678 (La.1977). After a second trial, he was again convicted of second degree murder and sentenced to life imprisonment without benefit of probation or parole for forty years. Hence this appeal.

II.
The evidence was clearly sufficient to satisfy a rational juror that defendant acted with specific intent to kill or inflict great bodily harm when he discharged a lethal weapon, aimed in the direction of two innocent and unsuspecting human beings who were strolling along the street at night.
The defenses were that defendant's intoxication precluded specific intent and that the shotgun blast, intended only to scare the victim, resulted in an accidental killing. In support of these defenses, defendant offered evidence to show that he (as well as his companion) consumed a significant quantity of alcoholic beverage, and he testified that he only meant to "scare" the men, one of whom he claimed provoked the incident by making an obscene gesture toward defendant. Despite his intoxication, defendant was obviously capable of planning an assault on his relative's home, of operating his shotgun, and of taking aim in the direction of the victim. The evidence was uncontested as to defendant's clearly unlawful act of intentionally discharging a shotgun at close range in the direction of others, after accurately shooting through the window of his relative's home, after instructing the driver to turn the car around and drive toward the victim, and after climbing out of the car window and aiming the shotgun. The resulting killing of a human being was also undisputed. When all of the evidence presented is viewed in a light most favorable to the state, we conclude a rational juror could have found proof beyond a reasonable doubt that defendant intended to kill or to inflict great bodily harm. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

III.
During the closing argument, defense counsel made reference to the mandatory life sentence resulting from a second degree murder conviction. In response, the prosecutor argued that defense counsel's plea failed to "take into account" possible changes in pardon and parole boards and further argued that "we all know from what our common sense tells us that no one serves the time they are given." The trial court sustained defense counsel's objection to the state's remarks and immediately instructed the jury to disregard them. However, the trial court rejected a defense request for a mistrial.
*1218 Under the circumstances, the judge did not abuse his broad discretion to determine whether a prosecutor's prejudicial remark (not falling within the proscription of the mandatory mistrial provisions of C.Cr.P. Art. 770) necessitates a mistrial or an instruction to disregard. C.Cr.P. Art. 771. Although this court has previously cautioned prosecutors about arguing speculative possibilities of future actions by pardon boards, the trial court's prompt and decisive action sufficiently neutralized the prospects of prejudice so that we cannot say that the argument influenced the jury or contributed to the verdict. See State v. Lindsay, 404 So.2d 466 (La.1981). Therefore, we conclude that the trial judge did not commit reversible error in refusing to exercise his discretion in favor of granting a mistrial.

IV.
The most difficult issue presented in this case relates to the trial court's clearly erroneous, but unobjected to, instructions defining the elements of the responsive offense of manslaughter.
Defendant's own testimony at trial effectively admitted the crime of "misdemeanor manslaughter".[3] In testifying that he intended to "scare" the pedestrians (but not harm them) by discharging the shotgun in their direction, defendant acknowledged that he acted with at least a general intent to place the pedestrians in reasonable apprehension of being struck with shot from the weapon, i.e., to assault them.
In defining the elements of "misdemeanor manslaughter", the trial judge erroneously instructed the jury that assault is not an intentional misdemeanor directly affecting the person. If counsel had objected to this instruction and the trial judge had failed to correct the error, we would be required to reverse defendant's conviction. Thus, the effect of the absence of an objection to the trial court's instruction is critical to our resolution of defendant's appellate complaint that the instruction prejudicially removed from the jury the option of returning the responsive verdict of manslaughter resulting from an assault.
The contemporaneous objection rule serves two laudable and related purposes. The first is succinctly stated in Professor Dale Bennett's original comments to C.Cr.P. Art. 841: to prevent the defendant from having "an anchor to windward" to urge for the first time in the event of conviction. See D. Bennett, The 1966 Code of Criminal Procedure, 27 La.L.Rev. 175 (1967). In fairness to the state, defendant cannot simply watch the proceedings unfold and silently hope that the state will introduce inadmissible evidence or that the trial court will commit error. Significantly, the rule also prevents defendant from adopting, as a matter of strategy, one approach at trial, and then, if that approach fails, arguing a contrary view on appeal.
The second and related purpose is one of judicial efficiency. The defendant has a duty to alert the trial court, if he objects to the admissibility of evidence or the method of proceeding. This allows the trial court to correct (or avoid) error, so that the verdict results from a trial which is as error-free as possible.
Nevertheless, this court has recognized exceptions to the rule's seemingly inflexible assertion that trial error, unless contemporaneously objected to, cannot be asserted on appeal. In State v. Williamson, 389 So.2d 1328 (La.1980), fundamentally erroneous misstatements of the essential elements of the charged offense were found to require reversal, despite the defendant's failure to raise an objection in the trial court. In that case this court apparently adopted a view, not totally unlike the federal "plain error" approach, that such fundamentally incorrect jury instructions so affect the fairness of the proceedings and the accuracy of the factfinding process that due process of law requires reversal, even in the absence of *1219 compliance with legislative procedural mandates.
The instant case does not present such a situation. Although the instruction may have removed from the jury's consideration the responsive verdict of manslaughter (as an unintentional killing in the course of an intentional assault), failure to object to the instruction may have been a calculated defense strategy. Given the instructions and the evidence presented, the jury was effectively left to choose between guilty and not guilty. It appears that defendant may have adopted such a strategy, since his closing argument not only stressed the "accidental shooting" defense, but also pointed out that defendant was only guilty of the non-responsive offense of negligent homicide, which necessitated acquittal. Since defense counsel attempted to persuade the jury to return a verdict of not guilty, when the evidence mandated a verdict of guilty of at least manslaughter, the erroneous instruction was arguably helpful to this attempt.
When counsel for defendant fails to comply with the contemporaneous objection rule, even in the case of a fundamentally erroneous instruction on the elements of an offense, it is not unreasonable to require defendant to carry the burden of satisfying this court that the procedural default (that is, the failure to raise the complaint properly) was excusable and was not the result of trial strategy. See Henry v. Mississippi, 379 U.S. 443, 85 S.Ct. 564, 13 L.Ed.2d 408 (1965); Estelle v. Williams, 425 U.S. 501, 96 S.Ct. 1691, 48 L.Ed.2d 126 (1976); Wainwright v. Sykes, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). Here, defendant has not borne this burden.
Further, the erroneous instruction related only to an element (albeit a crucial one) of a responsive verdict, rather than to the definition of the offense charged. In such a case, it is not so apparent that the erroneous instruction fundamentally affects the fairness of the proceedings and the accuracy of the factfinding process.
Defendant's conviction and sentence are affirmed.
CALOGERO, J., concurs while not in agreement with the majority's treatment of defendant's supplemental assignment of error, paragraph IV in the opinion.
CALOGERO, Justice, concurring.
I respectfully concur.
With respect to the defendant's supplementary assignment of error which is treated in section IV of the opinion, I am of the view that it does not have merit because the trial judge's lengthy and informative instruction did not improperly interfere with the jury's properly considering the responsive verdict of manslaughter.
NOTES
[*] Judge H. Charles Gaudin of the Court of Appeal, Fifth Circuit, and Judge Philip C. Ciaccio of the Court of Appeal, Fourth Circuit, participated in this decision as justices pro tempore, with Chief Justice Dixon and Associate Justices Calogero, Dennis, Watson and Lemmon.
[1] Defendant's other contentions lack any arguable merit and are treated in an unpublished appendix which is part of the official record in this case.
[2] At the time the brother-in-law was separated from defendant's sister.
[3] Manslaughter includes an unintended killing resulting from an intentional misdemeanor directly affecting the person. R.S. 14:31(2)(a). An assault (the intentional placing of another in reasonable apprehension of receiving a battery) is an intentional misdemeanor directly affecting the person. R.S. 14:31(2)(a), Reporter's Comment.