580 So.2d 497 (1991)
STATE of Louisiana
v.
Elmore J. WILLIAMS.
No. 90-KA-0759.
Court of Appeal of Louisiana, Fourth Circuit.
May 16, 1991.
*498 Sherry Watters, Orleans Indigent Defender Program, New Orleans, for appellant.
Harry F. Connick, Dist. Atty., Martin Melton, Asst. Dist. Atty., New Orleans, for appellee.
Before KLEES, CIACCIO and PLOTKIN, JJ.
CIACCIO, Judge.
Defendant, Elmore J. Williams, was charged by grand jury indictment with second degree murder, a violation of LSA-R.S. 14:30.1. A jury convicted him as charged and the trial judge sentenced him to life imprisonment at hard labor without benefit of probation, parole or suspension of sentence. Defendant appeals.

Facts
On January 20, 1989 Officer Percy Reed responded to a call that there had been a shooting in the St. Bernard Housing Project in the 3900 block of St. Bernard Avenue. He proceeded to that location and found the victim, Gregory Sanders, lying unconscious on the neutral ground. He called the emergency unit which took Sanders to the hospital where he died.
Shortly after Reed arrived on the scene, a man approached him and told him that there was an eyewitness to the shooting and that she wanted to talk to him. Reed met and interviewed this eyewitness, Shevonne Davis, at the community center in the next block.
Shevonne Davis was the State's primary witness at the trial and the only eyewitness to the shooting who testified at trial. She testified that on January 20, 1989 at about 11:45 a.m. she was cleaning her apartment located in the St. Bernard Project when she observed Sanders walk by her apartment. She said she had never seen him before. Sanders was subsequently approached by Charlene Price, a St. Bernard Project resident. Charlene accused Sanders of owing her some money. Sanders denied that he did. Charlene then went to the corner and returned with the defendant, Elmore Williams. According to Davis, Charlene told Williams that Sanders owed her some money. Consequently, Williams asked Sanders to pay Charlene. When he did not, Williams pulled a gun on Sanders. Sanders then said "you going to shoot an unarmed man? I don't owe her anything." After exchanging a few more words, Williams shot Sanders. According to Davis, Sanders was unarmed and did not approach Williams.
Charlene Price testified at trial for the defense. She testified that she had seen Sanders on two occasions prior to the shooting when he had come to the neighborhood to buy drugs. On January 20, 1989, the day of the shooting, she first saw Sanders at 6:30 a.m. She was standing outside her apartment with a woman known to her only as "Slick." After Sanders bought some "crack" cocaine, Sanders asked Charlene if he could use her apartment to smoke the crack and to be with Slick.
When he was inside her apartment with Slick, he asked Charlene to buy some more drugs for him, telling her that he would pay her later. She bought the drugs for him and went back to her apartment. Sanders was still there with Slick. He told her that he would pay her before he left her apartment and showed her approximately $700.00 to $800.00 he had in cash. Later, she asked him again for the money. He was acting "strange" and did not want to pay her.
Thereafter, he and Slick left without Sanders paying Charlene. Charlene left in pursuit. She found Sanders and Slick in the courtyard. Sanders was buying more *499 drugs. He again refused to pay her. Sanders and Slick then went into the house of Shevonne Davis. As Sanders and Slick exited Davis' house, Charlene saw the defendant, Williams, a good friend of hers. She told him that Sanders owed her some money.
As she and Williams attempted to talk to Sanders about the money Sanders owed Charlene, Sanders began to approach them. He was acting "Ramboish." Charlene and the defendant began to back away from Sanders, who was allegedly larger than the defendant. Sanders put his hands in his pockets and continued to approach them. Charlene got behind the defendant and turned to run home. She then heard a shot. She looked around and saw Sanders still approaching the defendant. As she ran home, she heard more gunshots. She testified that, in her opinion, the defendant shot Sanders in self-defense. However, she stated that she never actually saw a gun on either Sanders or the defendant, presumably because she had turned to run home as the shots were fired. No gun was found near where Sanders was shot.

Errors Patent
A review of the record for errors patent reveals none.

Assignments of Error
As his first assignment of error defendant contends that the trial court erred in denying its motion for a new trial based upon newly discovered evidence. Three new witnesses, Rhonda Sylvester, Sheila Dixon and Sylvia James testified at the motion for new trial hearing which was held on September 6, 1989 and October 3, 1989.
Rhonda Sylvester was the girl who was with Sanders on the morning of the shooting. Defendant contends that she was not located before trial because defense counsel did not know her real name as she had been identified by Charlene Price only as "Slick." Sylvester testified that she first saw Sanders on the morning of the shooting in the driveway in the St. Bernard Housing Project. He asked her where he could buy crack cocaine. She took him to purchase the drug. The two of them then went over to Price's house where they did cocaine.
Sylvester further testified that Sanders had a gun in his possession that he wanted to pawn. They left Charlene's house and went to Sheila Dixon's house to ask Dixon where Sanders could pawn his gun. After unsuccessfully trying to pawn his gun to Dixon and to another person, Sanders and Sylvester then went to Davis' apartment to smoke cocaine. After a while, Sylvester left Sanders at Davis' house. According to Sylvester, Sanders still had the gun when she left.
Shelia Dixon also testified. Her testimony corroborated Sylvester's testimony. Defense contends that it did not know about Dixon's contact with Sanders until after the trial when counsel talked to Sylvester. Dixon testified that she saw Sanders and Sylvester at about 7:30 a.m. on the day of the shooting. Sanders had a gun in the pocket of his jacket which he showed to her and asked her if she knew where he could pawn it. She had met Sanders once before, about three weeks earlier, when he had come to her apartment with one of her girlfriends to smoke cocaine.
Dixon also testified that she knew Shevonne Davis, that she had seen her sell cocaine and that people frequently smoked cocaine at her apartment.
Sylvia James, defendant's former girlfriend, also testified at the motion for new trial hearing. She testified that she witnessed the shooting from her mother's backyard at 3416 Jumonville Street and that Sanders pulled a gun on the defendant before defendant shot him. She further testified that she knew the state's witness, Shevonne Davis, as they had done cocaine together on several occasions. James stated that she was present in the courtroom during defendant's trial and had consulted with the defense attorney but that she did not admit being a witness to the murder until after the jury deliberated. She also testified that she had remained friends with the defendant and continued to visit him weekly during his incarceration.
*500 On appeal, defense contends that the trial court erred in denying its motion for new trial based upon the testimony of Rhonda Sylvester and Sheila Dixon only. Because defendant does not rely on Sylvia James' testimony, we can not consider it in ruling on this assignment of error.
LSA-C.Cr.P. art. 851 sets forth the grounds for a new trial. It specifically provides:
The motion for a new trial is based on the supposition that injustice has been done the defendant, and, unless such is shown to have been the case the motion shall be denied, no matter upon what allegations it is grounded.
The court, on motion of the defendant, shall grant a new trial whenever:
1) The verdict is contrary to the law and the evidence;
2) The court's ruling on a written motion, or an objection made during the proceedings, shows prejudicial error;
3) New and material evidence that, notwithstanding the exercise of reasonable diligence by the defendant, was not discovered before or during the trial, is available, and if the evidence had been introduced at the trial it would probably have changed the verdict or judgment of guilty;
4) The defendant has discovered, since the verdict or judgment of guilty, a prejudical error or defect in the proceedings that, notwithstanding the exercise of reasonable diligence by the defendant, was not discovered before the verdict or judgment; or
5) The court is of the opinion that the ends of justice would be served by the granting of a new trial, although the defendant may not be entitled to a new trial as a matter of strict legal right. Amended by Acts 1974, No. 207, Section 1.
This article sets forth four requisites which must be met for a motion for new trial based upon newly discovered evidence to be granted: 1) the evidence must have been discovered since the trial; 2) failure to learn of the evidence at the time of trial was not due to defendant's lack of diligence; 3) the evidence must be of such a nature that it would probably produce an acquittal in the event of retrial. State v. Knapper, 555 So.2d 1335 (La.1990); State v. Prudholm, 446 So.2d 729 (La.1984).
The trial judge's ruling regarding whether these requisites are found is entitled to great weight, and his denial of a motion for new trial will not be disturbed on appeal absent a clear abuse of that discretion. Knapper, supra; State v. Hall, 454 So.2d 409 (La.App. 4th Cir.1984); State v. Beckendorf, 451 So.2d 66 (La.App. 4th Cir.1984). However, "where the exercise of discretion is arbitrary and the judgment is unjust, it will be set aside." Knapper at 1339. Additionally, "it is not for the trial judge to weigh the evidence to determine the guilt or innocence of the defendants; rather the judge must ascertain whether another jury presented with all the evidence including that recently discovered, would probably reach a different verdict." Id. at 1339.
In attempting to apply these requisites to the facts of this case, defense counsel contends that at trial he did not know Rhonda Sylvester's name, but only knew her as "Slick" as per Charlene Price's testimony, and that he did not discover her name until after trial. Further, he learned of Sheila Dixon only through interviewing Rhonda Sylvester. Thus he contends that these two witnesses were discovered only after trial through no lack of diligence on his part. He also contends that their testimony regarding Sanders' possession of a gun is material to proving that the defendant acted in self-defense and in discrediting the testimony of state witness, Shevonne Davis. He further contends that the testimony would probably produce an acquittal if the case were re-tried because it corroborates the defense's theory of self-defense and undermines the testimony of Shevonne Davis. He relies upon, Knapper, supra, as authority for this last contention, that the jury would reach a different verdict in light of the new evidence.
Knapper is clearly distinguishable from the present case. In Knapper, Corneal *501 Knapper was convicted of the second degree murder of Timothy Loving. Loving was Knapper's sister's boyfriend. On July 5, 1985, Loving took Knapper's sister to the airport and then called Knapper to meet him at his [Loving's] parents' house in downtown New Orleans. Knapper lived uptown with his sister. Knapper went downtown, visited with Loving for a while and went home. When he got home he discovered that $2,000.00 belonging to him had been stolen from his house.
A few days later, Knapper learned from his nephew, Rogers Johnson, that Loving had been found in Knapper's mother's house and that his mother was missing some money and jewelry. Suspecting that Loving may have stolen the $2,000.00 from him, Knapper and Johnson, each armed with a gun, searched for Loving. They found him in the St. Bernard Housing Project visiting his friend Byron Snead. Loving, Knapper and Johnson got into an argument outside Snead's apartment. Loving was in the doorway facing Knapper and Johnson. Accounts vary as to what happened next.
Knapper testified at trial that Loving turned away from them, pulled a gun from his waistband, then turned back around and fired at him and Johnson, resulting in him and Johnson firing back in self-defense. This version of the story was corroborated by the testimony of an eyewitness, George Smith.
Snead, on the other hand, testified at trial that Loving was unarmed. In any event, Knapper and Johnson fired at Loving several times, killed him and then ran away. No gun was found on Loving. The jury convicted Knapper of first degree murder, rejecting his self-defense argument.
After trial, an investigator for the defense located another person who had witnessed the shooting from his grandmother's house. He had not come forward before because the police had, after the shooting, questioned him as a suspect and searched his grandmother's house. He said that the victim, Loving, had pulled a gun on Knapper and Johnson before they shot him. He further said that after the shooting, he had seen Snead remove a gun from Loving.
A motion for new trial was filed based upon this newly discovered evidence, which was denied by the trial court. This Court affirmed the defendant's conviction, but the Louisiana Supreme Court reversed the conviction. It emphasized that the new witness's testimony not only corroborated other defense testimony, but undermined the testimony of Snead, the State's only eyewitness.
The new witness in Knapper, unlike the new witnesses in this case, was an actual eyewitness to the crime and could offer testimony that the victim at the time of the shooting pulled a gun on defendant. In this case, however, neither Rhonda Sylvester or Sheila Dixon witnessed the shooting. Their testimony is only that the victim had a gun in his possession shortly before the shooting. They cannot testify regarding whether Sanders still had the gun when he argued with the defendant and whether Sanders, even if he had the gun, pulled it on the defendant. Their evidence is circumstantial evidence instead of direct evidence, and thus differs from Knapper.
The fact that Sylvia James was present in the courtroom during defendant's trial and failed to offer her testimony in support of her former boyfriend at that time and none of the other witnesses came forward prior to trial supports the trial judge's refusal to grant a new trial. In addition, we are not thoroughly convinced that the new evidence discovered after trial could not have been made available by the exercise of reasonable diligence. Accordingly, the trial court did not err in denying the motion for a new trial.
In a supplemental brief filed on his behalf, defendant assigns as error the trial judge's jury charge. Specifically, he contends the trial court's definition of "reasonable doubt" included in the jury charge was in violation of the Sixth Amendment Due Process Clause of the United States Constitution, citing the recent case of Cage v. Louisiana, ___ U.S. ___, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990).
*502 In Cage, the United States Supreme Court found that the jury charge defining reasonable doubt which used the phrases "grave uncertainty," "actual substantial doubt", and "moral certainty" could have led a reasonable juror to interpret the instruction "to allow a finding of guilt based on a degree of proof below that required by the due process clause." The Court reversed the judgment of the Louisiana Supreme Court affirming the defendant's conviction and sentence.
In the present case, unlike Cage, the record shows no objection was made at trial to the jury charge. So the question is whether the lack of a contemporaneous objection to the charge precludes its review on appeal. State v. Anthony Dobson, 578 So.2d 533 (La.App. 4th Cir.1991).
LSA-C.Cr.P. art. 841 sets out the general contemporaneous objection rule in Louisiana: "An irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence." Art. 801 contains the following provision dealing specifically with a jury charge:
A party may not assign as error the giving or failure to give a jury charge or any portion thereof unless an objection thereto is made before the jury retires or within such time as the court may reasonably cure the alleged error.
Consistent with these statutes Louisiana appellate courts have refused to consider arguments on jury charges where no contemporaneous objections were made. State v. Dobson, id.; State v. Thomas, 427 So.2d 428 (La.1982); State v. Mart, 419 So.2d 1216 (La.1982); State v. Henry, 551 So.2d 9 (La.App. 4th Cir.1989); State v. Barbee, 543 So.2d 530 (La.App. 4th Cir. 1989).
Accordingly, for the foregoing reasons defendant's conviction and sentence are affirmed.
AFFIRMED.
PLOTKIN, J., dissents with reasons.
PLOTKIN, Judge, dissenting with reasons:
I wish to dissent on the issue of the denial for the motion for a new trial. I concur with the majority's opinion on all other issues.
The majority correctly set forth the standard for granting a motion for a new trial. It found, however, that one of the criteria, that the newly discovered evidence would have resulted in a different verdict in a retrial, was not present in this case. I disagree.
The state presented only one eyewitness to the crime, Shevonne Davis. The defense called Charlene Price, the defendant's girl friend, who testified that the defendant might have shot the victim in self-defense. However, she did not actually see the victim with a gun.
Since trial, three new witnesses have been discovered, two of whom state that they saw the victim with a gun shortly before he was shot. They also testified that the victim and the state's witness knew each other, which would tend to impeach the testimony of the state's only witness.
Defense counsel at trial, from the Orleans Indigent Defender Program, did not have the resources to track down these witnesses before trial. The testimony of these witnesses could have altered the verdict. The state's case rested on the testimony of one witness. These new witnesses could have impeached that testimony. Furthermore the new witnesses could have strengthened the defense that the victim had a gun and that the defendant thus shot him in self-defense, which the jury may not have believed when this defense rested solely on the testimony of the defendant's girl friend. Thus I believe that the fourth criterion for granting a motion for a new trial could have been satisfied. Therefore I respectfully dissent on this issue.