618 So.2d 883 (1993)
STATE of Louisiana
v.
Leonard E. MONTEGUT.
No. 92-KA-0847.
Court of Appeal of Louisiana, Fourth Circuit.
March 11, 1993.
Rehearing Denied June 23, 1993.
*885 Harry F. Connick, Dist. Atty., Robyn C. Gulledge, Asst. Dist. Atty., New Orleans, for plaintiff.
Herbert V. Larson, Jr., New Orleans, for defendant.
Before BYRNES, LOBRANO and ARMSTRONG, JJ.
ARMSTRONG, Judge.
This appeal was granted in response to an application for post conviction relief. The defendant, Leonard E. Montegut, was indicted for possession of heroin with intent to distribute. A jury found him guilty as charged. The defendant was subsequently sentenced to life imprisonment without benefit of probation, parole or suspension of sentence. The original appellant counsel assigned ten errors and argued five. The conviction and sentence were affirmed. State v. Montegut, 471 So.2d 286 (La.App. 4th Cir.1985).
On September 30, 1991 the defendant, through counsel, filed an application for post conviction relief in which he raised ten claims. An evidentiary hearing was held on December 20, 1991 and memoranda were submitted by both parties. On January 24, 1992 the trial court heard additional argument and ruled on the application. The application was denied in part as to the request for a new trial, but granted in part as to the request for a new appeal and as to resentencing the defendant to delete the parole restriction.[1]
Appellant counsel for this appeal filed nine assignments of error, but briefed only five. Of the five assignments briefed, the three relative to jury charges were combined into a single argument.
STATEMENT OF THE FACTS
The record reflects that in November, 1982, The New Orleans Police Department received a tip from a reliable confidential informant that the defendant was trafficking narcotics from his home at 2808 Dumaine Street. The Police began surveillance of this address on November 24, 1982, and observed the following series of events:
1). A black female exited the defendant's apartment and drove a red Oldsmobile Cutlass, registered to the defendant, to the intersection of Republic and Law Streets;
2). At the intersection the woman parked and was met by a white female, later identified as Sharon Freeman, driving a tan Volkswagon;
3). Ms. Freeman walked to the Cutlass, remained momentarily, returned to her car, and drove away;
4). One of the officers followed the Volkswagon to 1742 Frenchman Street while the other officer followed the Cutlass back to the defendant's address.
At this time the surveillance ended.
On December 2, 1982, the officers received more information concerning the defendant's narcotics transactions. At this point they initiated surveillance at both the Dumaine and Frenchman Street addresses. On this date the officers observed the following:
1). The officer at Dumaine Street observed Ms. Freeman drive past the defendant's residence twice (the Cutlass was not there at the time);
2). Later that day the defendant returned home in his Cutlass and made several short trips out;
3). On one occasion when the defendant left his residence he got in the Cutlass and drove towards the downtown area;
4). At the same time the officer at Frenchman Street observed Ms. Freeman drive her Volkswagon towards the intersection of Claiborne and Ursuline Streets;

*886 5). Finally, at approximately 8:00 p.m. the defendant and Ms. Freeman met under the Claiborne overpass.
At this point the officers left their vehicles and observed the defendant holding a small package wrapped in yellow tissue paper. When the officers announced themselves, the defendant threw the tissue on the ground and began running towards his car. He was apprehended after a struggle. The tissue paper was recovered and found to contain nine bags of heroin. The officers advised the defendant of his Miranda rights and placed him under arrest. Immediately thereafter, the defendant told one of the arresting officers that he only deals heroin to adults and not children.[2]

ERRORS PATENT REVIEW
A review of the record for errors patent reveals that the prohibition against parole illegally imposed at the original sentencing was deleted by the trial court on January 24, 1992, in response to the defendant's application for post conviction relief. There were no other errors patent.

DEFECTIVE JURY CHARGES
The defendant's first argument is that the jury instructions for the lesser included offenses of simple possession of heroin and attempted possession of heroin did not accurately state the elements of those offenses. The State responds first that the defendant appellant is barred on procedural grounds from raising errors on appeal which were not objected to at trial. The State further responds that, even if the claim is not procedurally barred, taking the instruction as a whole, reasonable persons of ordinary intelligence would understand the contested jury charges.
Trial counsel submitted twelve special charges which the trial court refused to read to the jury. A review of those instructions reveals that none of them dealt with the elements of the lesser included offenses. At the conclusion of the recitation of the trial court's jury charges, the following transpired:
BY THE COURT:
In this matter, Mr. Harris [defense counsel] has filed a number of requested charges with the Court. The Court has reviewed same and the Court at this time denies specifically giving these special charges based on the ground that in part they were covered by the Court charge in the laws of the State of Louisiana. You may lodge your objection if you wish, Mr. Harris, to the Court's denial of specifically reading your special charges which are numbered I through XII.

BY MR. HARRIS:
We'd so objection [sic].
At the hearing on the application for post conviction relief, trial counsel was asked whether his objection was intended to apply to the exclusion of his own special charges or to the charges given by the court. Counsel responded that he was objecting to the fact that the trial judge did not give the charges that he had submitted and also to the charges that were given. He noted that he would be reluctant to interrupt the court in the midst of charges. On cross-examination Harris admitted that, although he would have preferred a more expansive charge, he did not think that the failure of the trial court to redefine possession in his instruction on the lesser included offenses was legally incorrect.
Despite the contention of trial counsel that his objection was intended to include the entire jury instruction, considering that counsel's objection gave no indication to the court that it was intended to include anything other than the exclusion of counsel's special charges, this court could reasonably conclude that no contemporaneous objection was made.
Even if this court concludes that no contemporaneous objection was made, the defendant argues that the Louisiana Supreme Court has recognized exceptions to the contemporaneous objection rule where the jury instruction contained misstatements of the elements of an offense, citing State v. Williamson, 389 So.2d 1328 (La.1980), and State v. Mart, 419 So.2d 1216 (La.1982). Williamson dealt with fundamentally erroneous *887 misstatements of the essential elements of the offense charged which required reversal. Mart, on the other hand, dealt with an erroneous instruction relative to a lesser included offense. In that case, the closing argument stressed an "accidental shooting" defense. The court there found that the erroneous instruction on manslaughter was arguably helpful to the defense. For this reason, the court found that when counsel failed to comply with the contemporaneous objection rule, it was not unreasonable to require the defendant to carry the burden of satisfying the court that the failure to object was not the result of trial strategy. The court in Mart found that the defendant failed to carry that burden. That court further noted that the instruction dealt with a responsive verdict, not the offense charged. The court concluded that, in such a case, it is "not so apparent that the erroneous instruction fundamentally affects the fairness of the proceedings and the accuracy of the factfinding process." Mart, 419 So.2d at 1219. The conviction was thus affirmed.
The assertion by trial counsel in the instant case, that he intended to object to the entire jury instruction as given, and counsel's admission that the instructions were "scantily correct," defeats any suggestion that his failure to object was trial strategy.
In State v. Dobson, 578 So.2d 533 (La. App. 4th Cir.1991), this court refused to consider an erroneous reasonable doubt jury instruction where no contemporaneous objection was made. This court there distinguished State v. Williamson, supra, for its unusual circumstances, where the error involved the very definition of the crime of which the defendant was convicted. Whether or not the instruction in the instant case is erroneous and fundamentally affects the fairness of the proceedings and the accuracy of the factfinding process cannot be determined without a review of the instruction itself within the context of the case. Accordingly, the claim is reviewed on its merits.
The defendant argues that the charges relative to the responsive verdicts were incorrect. The charges complained of are as follows:
The essential elements of mere possession of heroin are the same as the first three, possession with the intent to distribute. One, knowingly and intentionally possess, must be either actual or constructive or the combination of both, and it must be heroin.[3]
The next possible responsive verdict in the case are what we call attempted possession of heroin with the intent to distribute it, and number four is mere attempt possession of heroin.
The complained of charges were immediately preceded by a full definition of the essential elements of possession of heroin with the intent to distribute. The court explained actual and constructive possession and stated that the substance must be heroin. He explained knowing and intentional possession. Finally, he defined distribution and the intent to distribute. We find that the instructions on the four essential elements of the charged offense were abundantly clear.
The charge relative to mere possession states that the elements are the same as the first three in possession with intent to distribute. The court then enumerates those three elements; knowing and intentional possession, actual or constructive possession, and the substance must be heroin.
The complained of charges relative to the lesser offenses of attempt possession with intent to distribute and attempt possession were immediately followed by a full discussion of attempt and specific criminal intent.
The defendant produced an expert in the field of communication theory, listening comprehension and message analysis, Dr. Larry Barker, for the hearing on the application for post conviction relief. The expert testified that he had been provided *888 with demographic studies which reflected on the Orleans Parish adult population relative to educational level, socioeconomic status, and percentage of minority representation. His study of the jury charges was then applied to a representative jury pool composed from that population. He opined that the probability was low that an average juror in Orleans Parish would understand the elements of the lesser offenses. He further opined that the probability was also low that a reasonable person of ordinary or average intelligence, presumably from his non-Orleans Parish population groups, would understand the elements of the lesser included offenses. On cross-examination, he admitted that his conclusion did not take into consideration the distinctions between the jury pool and the population at large or the jury selection process. The State contends that the defendant's expert did not base his research on the actual jurors and that his conclusions are therefore irrelevant.
Dr. Barker also admitted that, although he read the entire charge, he was "commissioned only to look at a certain section." There is no question that the instructions on the lesser offenses, standing alone, are insufficient. However, full definitions and explanations of the specific elements of the lesser offenses were given either within, immediately preceding, or immediately following the subject charges.
The test articulated by the Louisiana Supreme Court is whether, taking the jury instructions as a whole, reasonable persons of ordinary intelligence would understand the charge. State v. Taylor, 410 So.2d 224 (La.1982). The opinions expressed by the expert as to reasonable persons of average intelligence are thus relevant. However, those opinions focused solely on the contested charges without consideration of the instructions as a whole. When the instructions are taken as a whole, a reasonable person of ordinary intelligence would understand the essential elements of the lesser offenses. The trial court thus did not err in failing to repeat the definitions within the enumeration of each of the responsive verdicts.

COUNSEL'S CONFLICT OF INTEREST
By this assignment the appellant avers that he was denied effective assistance of counsel because his trial counsel represented both appellant and Belencia Lewis, a potential witness in his case. When a defendant in a criminal case is represented by an attorney laboring under an actual conflict of interest, the defendant has been denied effective assistance of counsel. Joint representation of multiple defendants is not a per se violation of a defendant's right to effective assistance of counsel. It rises to that level only if the defendant proves an actual conflict of interest. State v. Ross, 410 So.2d 1388 (La. 1982). Generally, a criminal defendant who raises the issue of ineffective assistance of counsel based on joint representation of co-defendants prior to trial is entitled to automatic reversal on a showing of an actual conflict of interest; no proof of prejudice is required. Holloway v. Arkansas, 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978). However, if the defendant fails to raise the issue until after trial, he must prove prejudice in addition to actual conflict of interest. Cuyler v. Sullivan, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980). In the instant case, the defendant did not raise the issue until after trial; therefore, he is required to prove both an actual conflict of interest on the part of his attorney and prejudice.
The defendant argues that his only real defense was for a reduction to simple possession, in that he was addicted to heroin and the drugs seized from his person were for his personal use. He avers that he and Belencia Lewis were the only ones who could testify to the facts of his addiction. However, counsel could call neither of them to testify because to do so would risk not only the self-incrimination of each, but also the incrimination of the other.
The defendant was the sole defendant in the instant case. He and Belencia Lewis were co-defendants in a case for possession of marijuana arising out of the search and seizure of their residence which occurred, pursuant to a search warrant, shortly after the seizure and arrest on which this conviction *889 is based. The cases were joined for purposes of the motion to suppress hearing only.
At the post conviction evidentiary hearing, Belencia Lewis testified that she was never asked to testify at the defendant's trial in this case, although she had testified for him at a previous trial for possession of heroin. She also testified that she pled guilty to the misdemeanor marijuana charge and was placed on two years inactive probation. Lewis further testified that she had no knowledge of the circumstances of the defendant's heroin arrest or of the heroin found on him in the instant case.
The defendant testified at the evidentiary hearing that he had a severe heroin habit and that Ms. Lewis was aware of it. He admitted that he had at least three prior felony convictions. He was out on bond pending appeal of one of those convictions, for possession of heroin, when he was arrested on the instant offense.
Trial counsel testified at the evidentiary hearing that he saw no conflict at the motion hearing or any other time. He further testified that it is his practice, in handling cases with multiple defendants, "to talk to each defendant and ... see if they have any objection; and, also, if [he sees] any potential conflict, as not representing one or the other." He noted that Ms. Lewis's case had already been disposed of by the time of the defendant's trial.
The trial judge also testified at the evidentiary hearing. While he did not recall the particular case, he testified as to his usual procedure when he saw an apparent conflict, as follows: "I would have called the State and the Defense into chambers and discussed it and told [defense counsel] I thought he had a conflict of interest ... and that he ought to elect one of the two defendants and get somebody else to represent him. And if he couldn't get anybody else to represent him, I'd appoint the OIDP." He noted that conflicts arose more apparently in a trial setting than a motion setting because you could have a situation where one defendant would testify against the other.
At the motion hearing of the instant case, the testimony relative to the seizure of the heroin from the defendant's person was separate from that testimony relative to the validity and scope of the search warrant which led to the seizure of the marijuana found in the residence. The defendant suggests nothing that either he or Ms. Lewis could have said at that hearing which would have caused a conflict with the interests of the other.
As to the trial, the State correctly notes that the defendant was not ready to concede that the substance seized was heroin. He paid for an out of town expert in an attempt to cast doubt on the testing procedure of the State expert. There is no cause to presume that he was willing to settle, prior to trial, for a defense of simple possession. Moreover, the other facts relative to the arrest, the meeting with an apparent buyer and the inculpatory statement would belie that defense. In addition, the State correctly notes that the problems relative to self-incrimination and incrimination of the other party would have occurred even if the defendant and Ms. Lewis had retained or been appointed separate counsel.
Finally, had the defendant testified, his testimony could not have hurt Ms. Lewis, as her case was settled. More likely, due to his prior convictions, his testimony would have hurt more than helped his cause.
It is unlikely that the testimony of either Ms. Lewis or the defendant would have helped the defendant's cause. It would have most definitely undermined the defense attempted. The decision not to call either of them to testify that the defendant possessed the heroin for his personal use was thus an exercise of appropriate trial strategy, not the result of a conflict of interest. This assignment lacks merit.

ILLEGAL SEIZURE
The defendant's final argument is that the heroin which he possessed at his arrest was illegally seized. C.Cr.P. art. 215.1 provides that an officer may stop a person in a public place whom he reasonably suspects is committing, has committed, or is about *890 to commit an offense and may demand of him his name, address, and an explanation of his actions.
An officer in the instant case had information from a confidential informant that the appellant was dealing in narcotics. Surveillance corroborated that information sufficiently to arouse reasonable suspicion that the defendant was about to engage in a transaction. The police thus had the reasonable suspicion required for a lawful investigatory stop.
Property abandoned without any prior unlawful intrusion into a citizen's right to be free from governmental interference may be lawfully seized. State v. Wheeler, 416 So.2d 78 (La.1982); State v. Williams, 398 So.2d 1112 (La.1981). In such cases, there is no expectation of privacy and thus no violation of a person's custodial rights. State v. Andrishok, 434 So.2d 389 (La.1983). A "seizure" does not take place unless the police apply physical force or the person submits to the officer's show of authority. California v. Hodari D.,___ U.S. ___, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991); State v. Ganier, 591 So.2d 1328 (La.App. 4th Cir.1991).
Because the officers in this case had reasonable cause to make an investigatory stop, there was no unlawful intrusion. The officers made a show of authority, but there was no physical force or submission to that show of authority before the property was abandoned by the defendant. The property discarded was thus abandoned by the appellant without any prior unlawful intrusion and was lawfully recovered for use as evidence. This assignment has no merit.
For the foregoing reasons, defendant's conviction and sentence, as amended by the trial court to delete the prohibition against parole, are affirmed.
AFFIRMED.
NOTES
[1] The trial court found that appellant counsel had been ineffective in failing to "argue to the Appellate Court the suppression or the denial of the Motion to Suppress the Evidence which was used against the defendant at trial, but argued at the appellate level evidence which did not have any bearing or was not introduced at this trial." The court thus concluded that the defendant was not adequately represented at the appellate level. The court advised counsel for the post conviction hearing that he would be allowed to reurge the defendant's appeal, taking into account any assignments of error that he felt were necessary.
[2] The statement of facts is taken verbatim from this court's opinion in the prior appeal.
[3] One could reasonably presume that there is an error in the transcription here. The trial court probably stated that "the essential elements are the same as the first three in possession with the intent to distribute." The reporter heard only a pause and so put in a comma, rather than the word in.