752 So.2d 287 (2000)
STATE of Louisiana
v.
Harlan J. CAUSEY & Sandra Celestine.
No. 98-KA-1946.
Court of Appeal of Louisiana, Fourth Circuit.
January 26, 2000.
*289 Harry F. Connick, District Attorney of Orleans Parish, Loan "Mimi" Nguyen, Assistant District Attorney of Orleans Parish, New Orleans, LA, Counsel for Plaintiff/Appellee.
Karen G. Arena, Louisiana Appellate Project, River Ridge, LA, Counsel for Defendant/Appellant.
Court composed of Judge JOAN BERNARD ARMSTRONG, Judge MIRIAM G. WALTZER and Judge JAMES F. McKAY, III.
WALTZER, Judge.

STATEMENT OF THE CASE
Appellants Harlon Causey and Sandra Celestine, and codefendants Kenneth Ulmer and Kevin Davis, were charged by bill of information in count one with possession of cocaine with intent to distribute, and in count two with possession of marijuana with intent to distribute. On 26 June 1997, following a trial by jury, Causey and Celestine were found guilty of simple possession as to both counts. Ulmer and Davis were acquitted. On 8 September 1997, trial counsel who represented both appellants filed motions in arrest of judgment, for judgment of acquittal, and for new trial. These motions were denied prior to sentencing on 23 January 1998. Causey was adjudged a triple offender and sentenced to life imprisonment without the benefit of probation or suspension of sentence. Celestine was found to be a second offender and sentenced to serve eight years at hard labor under the provisions of the multiple bill.

STATEMENT OF THE FACTS
On the afternoon of 17 April 1996, Sgt. Stephen Imbraguglio conducted a surveillance of the residence at 1036 Clouet Street. He observed three subjects engaged in what appeared to be hand-to-hand drug transactions with an unknown black male, estimated to be in his twenties, who was inside the residence. Sgt. Imbraguglio observed the man accept currency through an iron gate and hand back a small object in each of the apparent transactions. As a result of this information, Sgt. Imbraguglio obtained a search warrant for the location, which warrant was signed on 18 April.
Despite the warrant, officers conducted additional surveillance on the afternoon of 19 April, immediately prior to execution of the warrant. At this time, Officers Dwight Rousseve and Clarence Gillard observed six apparent drug transactions within about an hour. Officer Rousseve specifically noted the participation of subjects later identified as defendants Kevin Davis and Kenneth Ulmer in those transactions. However, as brought out by defense counsel on cross-examination, none of the apparent *290 buyers were stopped to confirm that the objects obtained were narcotics.
Following this second surveillance, the officers executed the warrant. Sgt. Imbraguglio and his partner, Det. Jeffrey Robinson approached the front door. Dets. Ricky Hunter and James Anderson detained people standing outside of the residence. Det. Jimmy Ward went to the back to stop anyone from escaping.
Sgt. Imbraguglio knocked on the front door, but could not open it because of the locked iron bars across it. At that time, Sandra Celestine came to the door. Sgt. Imbraguglio advised her that he had a search warrant and ordered her to open the door. She complied. Imbraguglio and Robinson entered and saw a man confined to a wheelchair and three other men in the front room. They observed Harlon Causey exit from the back bedroom to the kitchen. All the subjects were relocated to the front room and detained by Officers Gillard and Rousseve.
The officers found white rocks and green vegetative matter. Upon testing, the white rocks were determined to be cocaine; the green vegetative matter was found to be marijuana. Specifically, Sgt. Imbraguglio found, on the floor of the back bedroom, a plate containing several rocks of cocaine. He also found, in a drawer in that room, a lady's purse containing three clear plastic bags of marijuana. The purse also contained a utility bill, a rent receipt and a Charity Hospital card, all with the name of Sandra Celestine and the subject address. Also in the back bedroom, Sgt. Imbraguglio found a loaded shotgun underneath the bed. He noted that there was male and female clothing in the closet and drawers.
Officer Richard Hunter seized a purple vinyl bag from the first bedroom. It contained crack cocaine. Officer Hunter also found, outside the house, near the window of the back bedroom, a bag containing two large chunks of cocaine and some money.
Officer Terry Wilson, with narcotics dog, Marco, found a clear plastic bag containing two pieces of crack cocaine and currency in the dresser drawer in the back bedroom. Officer Wilson explained that Marco could detect the currency because it is porous and retains the scent of narcotics if someone had handled narcotics shortly before handling the currency. Marco also led Officer Wilson to a shoebox containing marijuana in the corner of the back bedroom.
Before the full search began, Officer Rousseve asked Ms. Celestine if she had any knowledge of drugs in the house. He asked her because she admitted that she lived in the house. She responded that there was marijuana in a drawer in the back bedroom. She further told the officers that she shared the back bedroom with Mr. Causey.
Counsel for defendant Kenneth Ulmer called Kathy Blair. Ms. Blair lived across the street from the house at 1036-1038 Clouet Street. Ulmer lived at 1038 Clouet Street. Ms. Blair testified that she was outside with the other subjects prior to the execution of the search warrant. She testified that she handed Ulmer her beeper, which he fixed and handed back to her. She contradicted the State's witnesses, who testified that Ulmer went in and out of the residence on several occasions after speaking to apparent buyers. She testified that Ulmer was talking only to Richard Reyes, who was sitting on the top porch of 1038 Clouet Street.

ERRORS PATENT REVIEW
A review of the record for errors patent indicates that the sentence imposed upon appellant Causey is illegally lenient. La. R.S. 15:529.1, subd. A(1)(b)(ii) mandates a life sentence without benefit of probation, parole or suspension of sentence for an offender whose third offense or either of the predicate offenses is a crime of violence, a drug violation punishable by imprisonment for more than five years, or any other crime punishable by imprisonment for more than twelve years. The *291 court imposed a life sentence on Causey under this section of the Habitual Offender Law. Nevertheless, the court specifically did not impose the prohibition against parole, and noted that the sentence was without benefit of probation or suspension of sentence.[1] However, as this error is favorable to the appellant and was not raised by the State, in may not be corrected on appeal. State v. Gervais, 546 So.2d 215 (La.App. 4 Cir.1989).

ASSIGNMENT ONE  BY COUNSEL
The appellants aver that counsel's representation of them both created a conflict of interest which made her assistance ineffective as to them both. Representation of more than one defendant by the same attorney does not violate federal or state constitutional rights to adequate legal assistance unless such representation gives rise to a conflict of interest. State v. Kahey, 436 So.2d 475 (La.1983). When there has been no objection to the multiple representation prior to or during trial, the defendant must show that an actual conflict of interest adversely affected his attorney's performance in order to establish a claim of ineffective assistance of counsel. Cuyler v. Sullivan, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980); State v. Lobato, 603 So.2d 739 (La.1992). That is, the defendant must prove both an actual conflict of interest and prejudice. State v. Montegut, 618 So.2d 883 (La.App. 4 Cir.), writ denied, 626 So.2d 1177 (La.1993). An actual conflict exists if the defense attorney owes duties to a party whose interests are adverse to those of the defendant. The interests of the other party and the defendant are sufficiently adverse if it is shown that the attorney owes a duty to the defendant to take some action that could be detrimental to his other client.
Appellants argue that if they had been represented by different counsel, counsel for Celestine could have argued that she only resided there, and that it was Causey who was involved in the sale of cocaine hidden from view. As to the cocaine in plain view, she could have argued that Causey had just placed it there, and she did not know about it. Of course, Celestine directed the officers to marijuana in her dresser, so she had no defense to that misdemeanor charge. As to Causey, he could have argued that he was only visiting the residence and did not know anything about the drugs found inside the home.
Causey argues that his counsel could have demanded a separate trial, at which he could have objected to the incriminating hearsay statement of Celestine or compelled her to testify. Causey relies on Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), which held that, where a codefendant's confession was admitted at a joint trial, and the codefendant did not take the stand, the defendant was denied his constitutional right to confront his accuser.
In the instant case, Celestine never confessed to the possession of cocaine, nor did she state that Causey possessed cocaine. Rather, she advised the officers that she had some marijuana in a dresser drawer in the back bedroom which she shared with Causey.
Neither of the appellants complained about the possible conflict which could arise from joint counsel until this appeal. Accordingly, they must now prove that counsel had a conflict, and that they were prejudiced by the conflict.
As noted by the State, the contradictory defenses alleged by appellants on appeal are not plausible. Causey was observed by the officers coming from the room in which there was cocaine in plain view. A bag of cocaine was found outside the window of the bedroom that Causey exited. The bedroom had both male and female *292 clothing in it. No trier of fact could reasonably believe that Causey was unaware of the cocaine in the room, even without Celestine's statement that Causey shared the room with her. Celestine, meanwhile, was tied to the evidence in the room by virtue of the purse in the dresser drawer, which held her identification. Besides the cocaine in plain view, and the bag of cocaine tossed out of the window of Celestine's bedroom, Marco and his handler found additional cocaine in a dresser drawer. Likewise, no trier of fact could reasonably believe that Causey had just put the cocaine there, in three different places, without her knowledge.
Thus, because appellants were not prejudiced by their use of the same counsel at trial, this assignment is without merit.

ASSIGNMENT TWO  BY COUNSEL
Celestine argues that her sentence of eight years at hard labor under the multiple bill is unconstitutionally excessive.[2] La. Const.1974, Art. 1, § 20. A sentence within the statutory limit is constitutionally excessive if it is "grossly out of proportion to the severity of the crime" or is "nothing more than the purposeless imposition of pain and suffering." State v. Caston, 477 So.2d 868 (La.App. 4 Cir.1985).
Generally, a reviewing court must determine whether the trial judge adequately complied with the sentencing guidelines set forth in La.C.Cr.P. art. 894.1 and whether the sentence is warranted in light of the particular circumstances of the case. State v. Soco, 441 So.2d 719 (La. 1983). If adequate compliance with La. C.Cr.P. article 894.1 is found, the reviewing court must determine whether the sentence imposed is too severe in light of the particular defendant and the circumstances of his case, keeping in mind that maximum sentences should be reserved for the most egregious violators of the offense so charged. State v. Guajardo, 428 So.2d 468 (La.1983).
When the trial judge fails to sufficiently set forth the factors considered in the imposition of this sentence, there is no need to remand the matter for resentencing if the record clearly shows an adequate factual basis which supports the sentence imposed. State v. Welch, 550 So.2d 265 (La.App. 4 Cir.1989), writ denied, 94-0437 (La.6/21/96), 675 So.2d 1071.
The sentencing range faced by appellant Celestine for possession of cocaine as a second offender was two and one-half to ten years. The trial court, after reviewing the pre-sentence report, noted that only the appellant's remorse prevented it from imposing the maximum sentence. The court further noted that the appellant's harsh sentence was justified by the fact that the appellant possessed narcotics, and a loaded shotgun, without regard to the effect this might have on her five, fifteen and sixteen-year-old children.
The facts of this case indicate that the appellants were involved in the distribution of narcotics, despite the jury's verdict of simple possession on both counts. Accordingly, given the facts of the offense, and the fact emphasized by the court that the appellant permitted this drug activity and a loaded weapon in the house with her minor children, the sentence imposed by the court is not unconstitutionally excessive.

ASSIGNMENTS OF ERROR  PRO SE
Celestine argues that the State failed to carry its burden of proving that five years did not elapse between the expiration of the sentence on the predicate conviction and the commission of the instant crime. She argues that the trial court erred by applying the 1997 law to the multiple bill adjudication. She also argues that she was denied effective assistance of counsel for counsel's failure to file a written response *293 to the multiple offender bill of information.
The cleansing period in effect at the time the newest offense was committed controls for purposes of La. R.S. 15:529.1. State v. Carr, 96-2388 (La.App. 4 Cir. 9/10/97), 699 So.2d 1105, writ denied, 97-2633 (La.2/6/98), 709 So.2d 732. In this case, the newest offenses were committed on 19 April 1996. A ten-year cleansing period was in effect on that date. Celestine pled guilty to the predicate felony on 28 September 1987. The record is sufficient to prove that the cleansing period between offenses had not elapsed.
As to the claim that counsel was ineffective for failure to file a written opposition to the multiple bill, Celestine avers that this omission prevented her from proving that her previous conviction was unconstitutionally obtained. The record contains a waiver of rights form from the predicate offense, which states all the rights required under Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). The appellant, defense counsel and the court all signed the form. By her signature on that document, the appellant agreed that she was not forced into making the plea, and that she was satisfied with her counsel. The form indicated a plea bargain for a suspended sentence. The record is sufficient to sustain the State's burden that the predicate plea was constitutional. Appellant suggests no other grounds which counsel might have alleged in a written opposition to the multiple bill. Accordingly, there was no ineffective assistance of counsel.
These pro se assignments are without merit.
CONCLUSION AND DECREE
Appellants' convictions and sentences are affirmed.
AFFIRMED.
NOTES
[1] The court was apparently heeding par. G of the statute which provides that all multiple bill sentences shall be without benefit of probation and suspension of sentence, but is silent on the issue of parole.
[2] The trial court noted oral motions to reconsider the sentence on behalf of both appellants.