665 So.2d 629 (1995)
STATE of Louisiana, Appellee,
v.
Eric Jerome THOMAS, Appellant.
No. 27507-KA.
Court of Appeal of Louisiana, Second Circuit.
December 6, 1995.
*630 Allan R. Harris, Assistant Indigent Defender, Shreveport, for Appellant.
Richard Ieyoub, Attorney General, Baton Rouge, Paul Carmouche, District Attorney, Catherine M. Estopinal, Assistant District Attorney, Shreveport, for Appellee.
Before NORRIS, BROWN and WILLIAMS, JJ.
BROWN, Judge.
Defendant, Eric Jerome Thomas, appeals his convictions for second degree murder and attempted second degree murder. His appeal is founded on the failure of the trial court to charge the jury that the state had the burden of proving beyond a reasonable doubt that the homicide was without justification. Defendant, who neither requested such a charge nor objected to the instructions given by the trial court, claims that the omission resulted in a trial lacking minimum standards of fairness and due process. We affirm.

FACTS
Defendant and two companions, Timothy Collins and his brother, Ricky Collins, spent the evening of March 19, 1993, at the apartment of Timothy's girlfriend, Tawana Thomas. At the apartment that evening, Tawana's roommate, Rasheena Olds, received a telephone call from her boyfriend, Terry Smith. Ms. Olds argued with Smith. Following the telephone conversation, Ms. Olds left with some friends. Shortly thereafter, Smith arrived at the apartment in a rage and demanded to be told of Ms. Olds' whereabouts. Unsatisfied with the answers given, Smith began to overturn furniture, speak loudly and make threats against Ms. Olds. When a neighbor stated that the police had been called, Smith, defendant and the two Collins brothers decided to leave.
It was raining and Timothy Collins asked Smith, who was driving a two-door, late model Cadillac, for a ride. Defendant slipped into the backseat behind Smith. Ricky and Timothy Collins occupied the passenger-side front and rear seats respectively. During the drive, Smith continued to express anger toward Ms. Olds and remarked that he had made a fool of himself at the apartment. While Smith was talking, Timothy Collins noticed defendant adjusting the waistband of his pants, revealing a small .38 caliber revolver. Alarmed, Timothy Collins touched defendant's arm; however, defendant pushed Collins' hand away. At Collins' request, Smith stopped near their home. Smith leaned forward, allowed defendant to exit the backseat and then shut the door. Ricky Collins leaned forward to let his brother Timothy out. As Ricky was getting out, he looked over the top of the car and saw defendant fire multiple shots at point-blank range toward Smith's head. One shot passed through Ricky's pants and grazed his leg. Timothy saw defendant shoot into the car, then open the driver-side door and drag Smith into the street. Defendant drove Smith's car away from the scene.
Defendant abandoned the car not far from the scene of the shooting and threw his weapon into a nearby ditch. A passing motorist found Smith's body in the street and notified police. Before the police arrived, the body was run over by another vehicle. An autopsy, however, confirmed that the victim was shot three times in the head at point-blank range and that this was the cause of death. After reaching his house, Ricky Collins realized that he had been shot in the leg. He was later treated at a hospital and released.
At the insistence of his parents, defendant, who was 19 years old, turned himself in and confessed to the shooting. He later assisted the police in recovering the discarded weapon. Tests confirmed that the shots that killed Smith were fired from defendant's gun. Defendant was indicted for the second degree *631 murder of Terry Smith, age 22, and attempted second degree murder of Ricky Collins, age 19.
Defendant pled not guilty to the charges. In his opening statement, defense counsel conceded that defendant did the shooting, but suggested that the facts and circumstances proved only manslaughter and attempted manslaughter. Defendant later testified that while riding in the Cadillac, Smith kept looking back at defendant and remarked several times that they (defendant and the Collins brothers) knew where Ms. Olds was and that they should tell. After getting out of the car, defendant stated that he drew his weapon and fired because of suggestive hand movements by Smith. Defendant claimed that he had been shot on two previous occasions when he was unarmed and that he was having flashbacks. On cross examination, the state attacked defendant's assertion of self defense by establishing that the car door was shut, that defendant saw no weapon and that he could have easily left. In closing arguments, defense counsel made no reference to the self-defense theory offered by defendant's testimony, but instead continued to argue that defendant was only guilty of the lesser offense of manslaughter.
Defendant did not request any special jury instructions. Jury instructions were given by the trial judge without objection from either the prosecution or defense counsel. The jury charges did not include specific instructions regarding justification or the state's burden to disprove self-defense. The jury returned a guilty verdict on both charges and defendant was given consecutive hard labor sentences of life imprisonment and 15 years. A timely motion to reconsider these sentences was filed and subsequently denied. This appeal followed.

DISCUSSION
If a defendant asserts that he acted in self-defense, he does not bear the burden of proof on that issue. Because the state must show a criminal homicide, the prosecution carries the burden of proving beyond a reasonable doubt that the accused did not act in self-defense or with justification. State v. Brown, 414 So.2d 726 (La.1982); State v. Collins, 306 So.2d 662 (La.1975); State v. Patterson, 295 So.2d 792 (La.1974).
Review of criminal trial errors on appeal has long been governed by the contemporaneous objection rule found in LSA-C.Cr.P. Art. 841:
An irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence.
More particularly, LSA-C.Cr.P. Art. 801 dictates the necessity of a timely objection to an omitted jury instruction:
A party may not assign as error the giving or failure to give a jury charge or any portion thereof unless an objection thereto is made before the jury retires or within such time as the court may reasonably cure the alleged error.
Recognizing his failure to request specific charges or object to the instructions given, defendant nonetheless argues that the omission of a jury charge concerning justifiable homicide and the state's burden to disprove self-defense resulted in a trial that fell short of the minimum standards of fairness and due process. Defendant claims that this was plain error of constitutional magnitude and, as such, reviewable even in the absence of a contemporaneous objection.
The contemporaneous objection rule serves two related purposes. The first prevents a defendant from withholding an objection or alternative theory of defense to urge for the first time on appeal in the event of a conviction. In fairness, a defendant cannot simply watch the proceedings unfold and silently hope the trial court will commit error. Nor can a defendant adopt, as a matter of strategy, one approach at trial, and then, if that approach fails, argue a contrary or novel view on appeal. The second purpose is the promotion of judicial efficiency. State v. Mart, 419 So.2d 1216 (La.1982). Our supreme court has jurisprudentially carved out limited exceptions to the requirement of a contemporaneous objection similar to the "plain error" rule provided in Fed.R.Crim.P. 52(b).
In State v. Williamson, 389 So.2d 1328 (La.1980), defendant was charged with attempted first degree murder but convicted of *632 attempted second degree murder. The substantive definitions of first and second degree murder were amended on June 29, 1979, and the incident occurred on July 17, 1979. Unfortunately, the jury was charged using the former rather than the amended definitions. Neither the state nor the defense objected to the instructions. Although noting a long line of authorities holding that erroneous jury charges were not errors patent on the face of the record and that absent a timely objection, such errors were not generally reviewable, the supreme court did review the error and reversed defendant's conviction:
[I]t is within the province of this reviewing court to entertain complaint of Constitutional violations on appellate review notwithstanding that consideration of such complaint more often than not is deferred until filing of a writ of habeas corpus. This Court's usual pretermission of such issues stems from the need of an evidentiary hearing which can only be had incident to the writ of habeas corpus. The record before us, however, bears full and sufficient proof of the error which no posterior hearing could augment. For this reason, the need for delay is obviated.
In the case at hand the asserted error involves the very definition of the crime of which defendant was in fact convicted. Such an error is of such importance and significance as to violate fundamental requirements of due process.
Williamson, 389 So.2d at 1331.
Two years later, the supreme court reemphasized the limited applicability of this "plain error" review in State v. Thomas, 427 So.2d 428 (La.1982). Here, defendant asserted that the failure of the trial court to correctly instruct the jury on first and second degree murder may have caused it to return a murder instead of manslaughter verdict. Despite the absence of a contemporaneous objection, defendant argued that the mistake was reviewable under the doctrine of plain error. The supreme court noted that the jury was properly instructed concerning manslaughter and could have returned such a verdict if they had not been convinced beyond a reasonable doubt that defendant acted with specific intent. Defendant failed to demonstrate that he was substantially prejudiced by the claimed irregularities. In the absence of substantial prejudice, the court declined to undertake the plain error review utilized in Williamson. In doing so, the court stated the following:

Williamson should not be construed as authorizing appellate review of every alleged constitutional violation and erroneous jury instruction urged first on appeal without timely objection at occurrence. This court has not created or recognized a plain error rule of general application.
Thomas, 427 So.2d at 435.
In State v. Green, 493 So.2d 588 (La. 1986), the supreme court again considered an error to which no contemporaneous objection had been made at trial. On the charge of third offense theft, the judge failed to give a limiting instruction requiring the jury to consider defendant's prior convictions solely for purposes of enhancement of the punishment and not for assessment of guilt or innocence. The court concluded that presenting evidence to the jury of defendant's two prior convictions in the guilt-determination phase of the trial, without instructions that this evidence was not to be considered in deciding guilt, was a substantial and constitutionally intolerable potential for prejudice. The court applied the plain error rule and reversed the conviction.
In State v. Arvie, 505 So.2d 44 (La.1987), the supreme court was again asked to consider an alleged error that occurred without contemporaneous objection. Here, the prosecution used defendant's post-arrest silence for impeachment purposes. The court again took the opportunity to stress the limited extent to which it would entertain exceptions to the contemporaneous objection rule:
This court's consideration of the erroneous jury instruction in the absence of a contemporaneous objection in Williamson did not create or recognize a plain error rule of general application. The unique facts of Williamson required consideration of an error which cast substantial doubt on the reliability of the fact-finding process. Likewise, the consideration of an error in the unobjected to omission of a fundamental jury instruction in Green was a reasonable *633 alternative to declaring unconstitutional the statute which by its terms did not require such an instruction. This type of error, similar to an error in the definition of a crime, substantially undermines the reliability of the fact-finding process in a criminal trial. [Citations omitted].
State v. Arvie, 505 So.2d at 48. The court concluded that a prosecutor's use during cross-examination of an accused's post-arrest silence did not have the same substantial effect on the reliability of the fact-finding process as the did the errors in Williamson and Green.[1]
The import of these decisions is clear. Louisiana has not adopted a general plain error rule. Those circumstances where review has been granted in the absence of a contemporaneous objection were fact-specific situations where the relevant errors substantially affected the fairness of the proceeding and the reliability of the fact-finding process. As in Arvie, the instant case does not present such a situation.
In opening statements, the defense readily admitted that Eric Thomas shot and killed Terry Smith. Defense counsel went on to state that "Eric has denied his guilt by his plea of not guilty and believes when the evidence, and all evidence from both sides comes to light, this was a manslaughter." Despite this stated strategy, defendant, while under direct examination, alluded to a hand movement by the victim.
Defendant testified that the victim's hand movement suggested that he was reaching for something, presumably a weapon. Defendant indicated that he felt threatened and that he fired all five rounds in his gun to protect himself. On cross-examination, defendant was questioned regarding retreat as a means to avoid a confrontation with Smith. When asked why he did not simply run, defendant responded: "[b]ecause I had a weapon on me at that time." Defendant also admitted that in a statement given to the police only hours after the shooting, he never mentioned the perceived threat.
Evidence presented at trial showed that Terry Smith was barefoot and clad only in thin shorts and shirt, suggesting the absence of a concealed weapon on his person. No weapon was found on his body, nor was a weapon found under the car's seat or anywhere else within the victim's immediate control. Neither defendant nor the Collins brothers testified to seeing a weapon brandished by Smith. While Smith was obviously angered, his rage was directed at Ms. Olds and himself. The evidence does not indicate that Smith's threats were ever directed at defendant or his companions. Further, the door on Smith's side of the car was closed when the shooting occurred. Thus, defendant clearly had an avenue of escape.
In closing statements, defense counsel made no reference to self-defense. Instead, counsel continued with the theme announced in the opening statement and asked the jury to conclude that the evidence proved only manslaughter and attempted manslaughter. At no time did defense counsel attempt to develop or assert a justification defense.
When counsel for defendant fails to comply with the contemporaneous objection rule, it is not unreasonable to require defendant to carry the burden of satisfying a reviewing court that the procedural default was excusable and not the result of trial strategy. State v. Mart, supra.
Self-defense was not legitimately and realistically asserted and was not a part of defendant's planned and stated strategy. Because the evidence against such a defense was overwhelming, a conscious choice was apparently made to pursue a lesser verdict of manslaughter. Under these circumstances, there was no substantial prejudice to defendant *634 and review under the limited doctrine of plain error is not warranted.
Defendant casually asserts that LSA-R.S. 14:27 (attempt) and 14:30.1 (second degree murder) are facially unconstitutional in that neither require the trial court to instruct the jury as to the burden of proof when the issue of self-defense is raised. Although LSA-R.S. 14:27 and 14:30.1 do not require such an instruction, neither do they prohibit one. On the other hand, LSA-C.Cr.P. Art. 802(1) requires the trial court to instruct the jury on the law applicable to the case. If justification is raised as a defense, then the court would be required to give the appropriate instructions to include the burden of proof in such cases. This does not, however, mandate that the trial court charge the jury on abstract principles of law not warranted by the evidence. State v. Vergo, 594 So.2d 1360 (La.App.2d Cir.1992), writ denied, 598 So.2d 373 (La.1992).

CONCLUSION
We conclude that defendant's basic rights to due process and procedural fairness were not violated by the omission of a jury charge concerning a defense unsupported by the evidence and not in accord with announced defense strategy. We therefore decline to apply the doctrine of plain error and consider the alleged error waived due to the absence of a contemporaneous objection.
AFFIRMED.
NOTES
[1] Other cases where appellate review of erroneous jury instructions were refused due to the absence of a contemporaneous objection were: (1) an alleged erroneous definition of the crime of conviction, State v. Belgard, 410 So.2d 720 (La.1982); (2) an instruction allegedly containing a prohibited presumption, State v. Stramiello, 392 So.2d 425 (La.1981); (3) an alleged erroneous instruction on the element of intent, State ex rel Ross v. Blackburn, 403 So.2d 719 (La.1981); State v. Walters, 25,587 (La.App.2d Cir. 1/19/94), 630 So.2d 1371; and (4) an alleged erroneous instruction on reasonable doubt, State v. Hamilton, 594 So.2d 1376 (La.App.2d Cir.1992); State v. Cleveland, 25,628 (La.App.2d Cir. 1/19/94), 630 So.2d 1365.