913 So.2d 874 (2005)
STATE of Louisiana, Appellee
v.
Roosevelt S. GARNER, Appellant.
No. 39,731-KA.
Court of Appeal of Louisiana, Second Circuit.
September 8, 2005.
Opinion Granting Rehearing November 17, 2005.
*876 Stephen A. Glassell, Shreveport, for Appellant.
Paul J. Carmouche, District Attorney, Dale G. Cox, Eddie Brossette, Assistant District Attorneys, for Appellee.
Before STEWART, GASKINS and MOORE, JJ.
STEWART, J.
Roosevelt S. Garner, the defendant, was convicted of manslaughter. He was sentenced to 20 years at hard labor without benefit of probation, parole or suspension of sentence. Because of the improper jury instruction on the burden of proof for self defense, we reverse and remand the defendant's conviction and sentence.

FACTS
The defendant and the victim, James Marshall, engaged in a fight on May 30, 2001. It is undisputed that the defendant inflicted injuries upon Marshall that placed him in a coma. When the police and emergency personnel arrived at the scene, a vacant lot at East 70th and Henderson in Shreveport, they found Marshall unconscious from a head injury. Marshall never regained consciousness, and ultimately died in a nursing home on December 15, 2001.
When the police arrived they found that the defendant had fled the scene; however, he later turned himself in to the police and received treatment for injuries to his hands. The defendant was then charged with aggravated battery and advised of his Miranda rights. He subsequently gave a statement to Detective Rod Johnson. In his statement the defendant said that he confronted Marshall about the change from a $20.00 bill owed to him. When the *877 defendant turned his back, Marshall grabbed him from behind, turned him around and hit Garner in the mouth. As a result a fight ensued between the two of them.
Once the police determined that there were no weapons involved in the fight, the charge was reduced from aggravated battery to second degree battery. However, after the victim's death, the charge was raised to manslaughter.
The defendant was charged with manslaughter and tried by jury in December 2003. Detective Rod Johnson of the Shreveport Police Department testified that he interviewed the defendant in the city jail the night after the incident. During this interview, the defendant stated that the victim hit him first, and it was only after the defendant was struck that he in turn struck Marshall three times.
The defendant called Isaac James Putnam, who testified that he was present during the incident. Putnam testified that the defendant had given Marshall $20.00 to purchase some beer. When Marshall returned without change, an argument ensued between the defendant and the victim. Putnam further testified that the defendant turned to walk away, and Marshall picked up a lug wrench and swung at the defendant's head. After Marshall struck the defendant on his arm, he turned and hit Marshall two or three times. Putnam denied ever seeing the defendant pick Marshall up and throw him back down to the ground.
The defendant testified on his own behalf stating that the argument started as a result of Marshall's failure to return the defendant's change from a $20 bill he had given Marshall. He also testified that after he proceeded to walk away, someone shouted "watch out," and Marshall hit him two or three times. He then turned around and hit Marshall. The defendant stated that he did not remember how many times he struck Marshall, but he acknowledged that Marshall was unconscious when he left the scene.
On cross, the defendant denied ever picking Marshall up and throwing him on the ground. This statement is corroborated by Putnam who was an eyewitness to the event. Although the defendant admitted that he made the statement to the police that he had thrown Marshall to the ground, he explained that he was angry, upset, and drunk when he made the statement. After the defendant's testimony, the defense rested.
In the jury instruction conference, the state proposed the inclusion of the homicidal self-defense instructions and modification of the manslaughter definition to include aggravated battery, second degree battery, and simple battery in lieu of "any felony" or "intentional misdemeanor." The defendant did not object to the language.
The jury found the defendant guilty as charged. The defendant's motion for post-verdict judgment of acquittal and a new trial were both denied. The state filed a habitual offender bill alleging the defendant to be a second felony offender, with the supporting felony being a guilty plea to DWI, Third Offense on April 15, 1994. The trial court found the defendant to be a second felony offender, and sentenced him to 20 years at hard labor, without benefit of probation, parole or suspension of sentence. The defendant appealed.

DISCUSSION
The defendant cited several assignments of error in his brief. We find that the assignment asserting error with the trial court's jury instructions eliminates the need to discuss the other assignments of error. The defendant argues that the trial *878 court erred by instructing the jury on non-homicidal self-defense instead of homicidal self-defense. The trial court failed to inform the jury that the prosecution has the burden of proof in self-defense cases. It is not incumbent upon the defendant to prove that he acted in self defense; the prosecution must prove beyond a reasonable doubt that he did not act in self defense. State v. Lynch, 436 So.2d 567 (La.1983). We believe that the improper jury instruction constitutes reversible error.
Article 882 of the Louisiana Code of Criminal Procedure provides that an appellate court has the authority to review cases on the issues that are raised by the defendant and correct any error patent unfavorable to the defendant. State v. Arrington, 556 So.2d 263, 266 (La.App. 2nd Cir.1990). We find that there is an error patent present in this case. Garrison should have received a jury instruction pertaining to the burden of proof in a homicidal self-defense case. Therefore, the trial court's judgment of conviction is reversed.
Our justice system provides a defendant with a presumption of innocence until he is proven otherwise. This presumption is fundamental to the fairness that a defendant is entitled to receive. LSA-Const. Art. 1 § 16. The trial court's failure to properly instruct the jury as to homicidal self-defense is detrimental to the fairness afforded to the defendant by the due process clause of our Constitution.
The concept of procedural due process is broadly defined as fundamental fairness, that requires that the state may not deprive a person of his basic fundamental rights of life, liberty, or property without establishing minimal procedural safeguards. State in Interest of A.E., 448 So.2d 183 (La.App. 4th Cir.1984). In this case the minimal procedural safeguards were not provided, because the jury was not instructed concerning the burden of proof in homicidal self-defense cases. When a defendant asserts that he acted in self-defense the state has the burden of establishing that he did not act in self defense. State v. Jackson, 419 So.2d 425 (La.1982). Failure to give a requested jury instruction constitutes reversible error only when there is a miscarriage of justice, prejudice to the substantial rights of the accused, or a substantial violation of a constitutional or statutory right. State v. Tate, XXXX-XXXX (La.5/20/03), 851 So.2d 921. Cert. Denied, 541 U.S. 905, 124 S.Ct. 1604, 158 L.Ed.2d 248 (2004). We believe that the court's failure to give the jury the proper instruction constitutes reversible error as it meets all the criteria of Tate, supra.
The instruction given by the court on the issue of self-defense was as follows:
In Louisiana, the law provides for self defense. The fact that the defendant's conduct is justifiable, although otherwise criminal, shall constitute a defense to prosecution for any crime based on that conduct. The defense of justification can be claimed when any crime, except murder, is committed through the compulsion of threats by another of death or great bodily harm, and the defendant reasonably believes the person making the threats is present and would immediately carry out the threats if the crime were not committed.
The use of force or violence upon the person of another is justifiable, when committed for the purpose of preventing a forcible offense against the person; provided that the force or violence used must be reasonable and apparently necessary to prevent such offense.
Justification where a death does not occur is an affirmative defense that the defendant has the burden of establishing by a preponderance of the evidence.

*879 A person who is the aggressor or who brings on a difficulty cannot claim the right of self-defense unless she withdraws from the conflict in good faith and in such a manner that her adversary knows or should know that she desires to withdraw and discontinue the conflict.
The trial court instructed the jury that the defendant has to prove justification in a case where a death does not occur. However, this is not a case where the victim did not die. Marshall ultimately died from the injuries that he received. Therefore, the trial court erred in instructing the jury on non-homicidal self defense.
The state argues in its brief that the defendant's failure to object to the language of the jury instructions renders the issue moot on appeal.[1] However, when there is an issue substantially affecting the fairness of the proceeding, then review can be granted. State v. Thomas, 27,507 (La. App. 2 Cir. 12/6/95), 665 So.2d 629. We believe that the issue of improper jury instruction is one substantially affecting the fairness of the proceeding below.
The failure to properly instruct the jury does not present an issue that can be considered harmless error. Garner's fundamental rights have been stripped from him without the proper process being observed. Because minimal procedural safeguards were not provided, reversal is warranted.

CONCLUSION
For the reasons presented, the defendant's conviction is reversed and the sentence is set aside.
REVERSED AND REMANDED.
MOORE, J., concurs with reasons.
GASKINS, J., dissents with written reasons.
MOORE, J., concurs.
I concur in Judge Stewart's cogent opinion reversing the defendant's conviction and remanding for a new trial. The important but erroneous jury instruction given by the court on the burden of proof likely caused confusion among the jurors. The defendant made out a colorable claim of self-defense through his own trial testimony and that of an eyewitness to the fracas. The trial judge incorrectly instructed the jury that "[j]ustification where a death does not occur is an affirmative defense that the defendant has the burden of establishing by a preponderance of the evidence." (Emphasis supplied).
Here, a death did occur, albeit months after the incident, and the defendant was tried for manslaughter, a grade of homicide. The trial court's inexcusably wrong instruction that the defendant bore the burden of proving self-defense could have contributed to an unreliable verdict, the integrity of which is undermined.
While the lack of a contemporaneous objection to the patently incorrect instruction is troubling, I find it excusable, in that the state requested that the court give a self-defense instruction for a homicide. The trial judge agreed, but, for whatever reason, failed to do so properly. The court bears the ultimate responsibility to adequately and accurately instruct the jurors on the law applicable to the case. La. C. Cr. P. art. 802.
I cannot subscribe to the notion that the failure to object contemporaneously to the *880 incorrect instruction requires this court to affirm the defendant's conviction under a harmless error analysis. Rather, it is my view that the peculiar circumstances of this case require that it be analyzed under the thoughtful analysis posed by Judge Brown in the case of State v. Thomas, 27,507 (La.App. 2 Cir. 12/6/95), 665 So.2d 629, writ denied, 96-0119 (La.1996), 671 So.2d 333, wherein he announced the following rule pertaining to the "plain error" doctrine:
Louisiana has not adopted a general plain error rule. Those circumstances where review has been granted in the absence of a contemporaneous objection were fact-specific situations where the relevant errors substantially affected the fairness of the proceeding and the reliability of the fact-finding process.
Thomas at 633.
The contrast between the case sub judice and Thomas is marked. Defense counsel offered testimony suggesting a plausible self-defense theory and vigorously argued self-defense in closing argument. The trial judge's incorrect instruction substantially prejudiced the defendant.
GASKINS, J., dissenting.
I respectfully dissent from the majority opinion to reverse this criminal conviction. Errors in jury instructions are subject to the harmless error analysis. Failure to give a requested jury instruction constitutes reversible error only when there is a miscarriage of justice, prejudice to the substantial rights of the accused, or a substantial violation of a constitutional or statutory right. State v. Tate, XXXX-XXXX (La.5/20/03), 851 So.2d 921, cert. denied, 541 U.S. 905, 124 S.Ct. 1604, 158 L.Ed.2d 248 (2004); State v. Marse, 365 So.2d 1319 (La.1978). Under the majority's reasoning, failure to give a justifiable homicide instruction, even if not requested, is reversible error in a case where that defense is sparsely supported, but nonetheless argued.
The record contains little or no evidence to support a justifiable homicide defense. In his statements to the police, the defendant stated that the victim failed to return his money, and, when confronted, hit the defendant in the mouth. The defendant said that he was mad and that the victim "hit the wrong person." The defendant never mentioned to the police that the victim was armed with a weapon. Even if it is accepted that the victim hit the defendant with a tire tool, causing no or minimal injuries, the state proved that the defendant did not reasonably believe he was in imminent danger of losing his life or receiving great bodily harm. The state further established that the defendant's response pummeling the victim to the ground, then picking him up, and dropping him on his headwas not necessary to prevent death or great bodily harm to the defendant by the victim. The failure to include the justifiable homicide instruction, while giving the non-homicide instruction, was harmless error. I would, therefore, affirm the conviction.

ON REHEARING
Before BROWN, STEWART, GASKINS, DREW and MOORE, JJ.
GASKINS, J.
The defendant, Roosevelt S. Garner, appealed his conviction and sentence for manslaughter. In a written opinion, this court found that the trial court's erroneous jury instruction of self-defense in a nonhomicide substantially prejudiced the defendant's due process rights; the defendant's conviction was reversed and the matter was remanded to the trial court. The State of Louisiana applied for rehearing, *881 contesting this court's decision. We granted rehearing to address this issue. After review, we reverse our prior opinion, affirm the defendant's conviction, amend and, as amended, affirm his sentence.

FACTS
On May 30, 2001, the defendant engaged in a fight with James Marshall. When the police and emergency personnel arrived at the scene, a vacant lot at East 70th and Henderson in Shreveport, they found Marshall unconscious from a head injury. Marshall never regained consciousness, and he died in a nursing home more than six months later.
The police quickly developed the defendant as a suspect. Aware that the authorities were looking for him, the defendant came to the police station several hours after the fight. Although he had no facial injuries, his hands were swollen and there was blood on his clothing. He was transported to the hospital to receive medical treatment; his hands were so swollen that regular handcuffs would not fit.
The defendant was originally charged with aggravated battery because it was believed that a weapon had been used to inflict the victim's injuries. After the police concluded that no weapon was used, the charge was reduced to second degree battery. Following the victim's death, the defendant was charged with manslaughter.
Trial was held in December 2003. Detective Rod Johnson of the Shreveport Police Department testified that he interviewed the defendant in the city jail the night after the incident. The defendant asserted that the victim had hit him first; he then struck the victim three times. According to his statement to the detective, after the victim fell to the ground, the defendant picked him up over his head and dropped him on his face. The defendant's recorded statement was played for the jury.
Officer Traci Mendels testified that she responded to the initial call about the battery. After the defendant was identified as a possible suspect, she went to look for him at two different addresses. Later the defendant contacted Officer Mendels and came to the police station. He was arrested, advised of his rights, and taken to the hospital for medical treatment of his badly swollen hands. While the defendant was in the officer's presence and squad car, his statements were recorded. The videotape of the statements was admitted into evidence.
The state also presented the testimony of Dr. George McCormick, the Caddo Parish coroner. He testified that the autopsy on the victim was actually performed by his former chief deputy coroner, Dr. Stephen Cogswell. At the time of trial, Dr. Cogswell was chief medical examiner for a six-county area in Florida. When Dr. McCormick attempted to testify about the cause of death based upon Dr. Cogswell's autopsy report, the defendant's counsel objected on the basis that the report was not properly authenticated. The trial court sustained the defendant's objection, but afforded the state an opportunity to lay a proper foundation.
Dr. McCormick verified that the autopsy report was a true and accurate copy of the report generated by his office. He also testified about Dr. Cogswell's qualifications as a forensic pathologist to perform autopsies. He stated that he had spoken to Dr. Cogswell and reviewed the reports himself. Dr. McCormick, who was accepted as an expert in forensic pathology, stated that if a person had been body slammed from over someone's head and landed on his face, that would be consistent with his findings. He testified that he concurred in Dr. Cogswell's conclusion that the victim's *882 death was caused by complications following blunt force injuries to the head and brain, the complication being a small bowel infarction due to his long hospitalization.
When the state sought to introduce into evidence Dr. Cogswell's autopsy report, the defendant reiterated his previous objection about the report's certification. The trial court found that Dr. McCormick, as the coroner, had sufficiently authenticated the autopsy report, and allowed it to be admitted into evidence.
The victim's sister testified that her brother was hospitalized for two months after the beating and was then transferred to a nursing home where he remained unresponsive until his death.
The defendant testified that he sent the victim to the store with $20 to get him some beer. The victim returned with neither the beer nor the money. The defendant stated that he attempted to walk away from the victim, but the victim attacked him. He became angry and struck the victim back. He asserted that he acted only in self-defense and that he never intended to cause the victim serious harm. The defendant claimed that he lied to the police when he said that he picked up the victim and that he had previous experience boxing. He testified that he was angry, upset and drunk when he talked to the police.
The defense also presented the testimony of Isaac James Putnam, a friend of the defendant who said he witnessed the fight. He corroborated the defendant's account of sending the victim to buy beer and the victim returning empty-handed. When the defendant attempted to walk away, the victim hit him with a lug wrench. The defendant blocked the blow with his arm and hand, and then struck the victim two or three times. Putnam testified that he did not see the defendant throw the victim over his shoulder and body slam him.
The jury found the defendant guilty as charged. The defendant filed a motion for postverdict judgment of acquittal, asserting that with Dr. McCormick's testimony that a small bowel obstruction was the immediate cause of death and with the fight eyewitness' testimony about self-defense, no rational jury could have found the defendant guilty. The defendant also filed a motion for new trial, asserting the verdict was contrary to the law and evidence. Both motions were denied.
The state filed a habitual offender bill alleging the defendant to be a second felony offender, with the supporting felony being a guilty plea to DWI, Third Offense on April 15, 1994. The defendant filed an objection to the habitual offender bill of information, asserting the DWI, Third Offense is already an enhancement offense, and could not be used to multi-bill the defendant. The trial court found the defendant to be a second felony offender, and sentenced him to 20 years at hard labor, without benefit of probation, parole or suspension of sentence.
The defendant filed a motion for reconsideration of sentence, asserting that the 20-year sentence was cruel and unusual punishment; it was denied.

JURY INSTRUCTION
The defendant argues that the trial court erred in giving the wrong jury instruction on self-defense and that this error confused the jury.
During the jury instruction conference, the state requested that the jury be instructed as to self-defense when it involved a homicide, and the trial court agreed. Unfortunately, the actual self-defense instructions given to the jury pertained to a nonhomicide situation. The instructions generally tracked the language of several of the justification articles in Title 14:

*883 In Louisiana, the law provides for self-defense. The fact that the defendant's conduct is justifiable, although otherwise criminal, shall constitute a defense to prosecution of any crime based upon that conduct. This defense of justification can be claimed when any crime, except murder, is committed through the compulsion of threats by another of death or great bodily harm, and the defendant reasonably believes the person making the threats is present and would immediately carry out the threats if the crime were not committed. [First paragraph of La. R.S. 14:18 & La. R.S. 14:18(6).]
The use of force or violence upon the person of another is justifiable, when committed for the purpose of preventing a forcible offense against the person, provided that the force or violence used must be reasonable and apparently necessary to prevent such offense. [Portions of La. R.S. 14:19.]
Justification where a death does not occur is an affirmative defense that the defendant had the burden of establishing by a preponderance of the evidence.
A person who is the aggressor or who brings on a difficulty cannot claim the right of self-defense unless he withdraws from the conflict in good faith and in such a manner that his adversary knows or should [know] that he desires to withdraw and discontinue the conflict. [La. R.S. 14:21.]
The jury instructions do not include the appropriate language from La. R.S. 14:20 pertaining to justifiable homicide. It provides, in relevant part:
A homicide is justifiable:
(1) When committed in self-defense by one who reasonably believes that he is in imminent danger of losing his life or receiving great bodily harm and that the killing is necessary to save himself from that danger.
When self-defense is raised as an issue by the defendant, the state has the burden of proving, beyond a reasonable doubt, that the homicide was not perpetrated in self-defense. State v. Cheatham, 38,413 (La.App. 2d Cir.6/23/04), 877 So.2d 164, writ denied, 2004-2224 (La.6/24/05), 904 So.2d 717; State v. Dooley, 38,763 (La.App. 2d Cir.9/22/04), 882 So.2d 731, writ denied, 2004-2645 (La.2/18/05), 896 So.2d 30.
Examination of the record reveals that the defendant did not object to the trial court's delivery of the nonhomicide self-defense instructions in this homicide case or to its failure to give the homicide-related self-defense instructions. The general law is that an error may not be asserted on appeal unless a timely contemporaneous objection is made. La. C. Cr. P. arts. 801, 841(A). Nevertheless, the jurisprudence has carved out an exception to this rule where such alleged trial errors raise overriding due process considerations. State v. Gaddis, 36,661 (La.App. 2d Cir.3/14/03), 839 So.2d 1258, writ denied, XXXX-XXXX (La.5/14/04), 872 So.2d 519, cert. denied, ___ U.S. ___, 125 S.Ct. 1649, 161 L.Ed.2d 487 (2005); State v. Lowery, 33,905 (La.App. 2d Cir.2/28/01), 781 So.2d 713, writ denied, XXXX-XXXX (La.2/22/02), 809 So.2d 978; State v. Williamson, 389 So.2d 1328 (La.1980).
The state contends that the jury instructions, read as a whole, reflect that the burden of proof was on the state to prove all of the case. However, if the trial court failed to properly define justifiable homicide, or to specifically denote the state's burden of proof in a case involving a justifiable homicide defense, errors in jury instructions are subject to the harmless error analysis. Failure to give a requested jury instruction constitutes *884 reversible error only when there is a miscarriage of justice, prejudice to the substantial rights of the accused, or a substantial violation of a constitutional or statutory right. State v. Tate, XXXX-XXXX (La.5/20/03), 851 So.2d 921, cert. denied, 541 U.S. 905, 124 S.Ct. 1604, 158 L.Ed.2d 248 (2004); State v. Marse, 365 So.2d 1319 (La.1978).
The record contains little or no evidence to support a justifiable homicide defense. In his statements to the police, the defendant stated that the victim failed to return his money, and, when confronted, hit the defendant in the mouth. The defendant said that he was mad and that the victim "hit the wrong person." The defendant never mentioned to the police that the victim was armed with a weapon. Even if one accepted that the victim hit the defendant with a tire tool, causing no or minimal injuries, the state proved that the defendant did not reasonably believe he was in imminent danger of losing his life or receiving great bodily harm. The state further established that the defendant's responsepummeling the victim to the ground, then picking him up, and dropping him on his headwas not necessary to prevent death or great bodily harm to the defendant by the victim. The failure to include the justifiable homicide instruction, while giving the nonhomicide instruction, was harmless error.
This assignment lacks merit.

AUTOPSY REPORT
In his next assignment of error, the defendant argues that he was denied his constitutional right to confrontation when the state presented the testimony of the coroner, instead of the deputy coroner who actually performed the victim's autopsy, on the issue of cause of death. In support of this position, the defendant cites the recent U.S. Supreme Court case of Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004).[1]
A review of the record shows the defendant never raised this issue when Dr. McCormick was testifying. Accordingly, he is not entitled to argue this basis for his objection on appeal. La. C.E. art. 103(A)(1); La. C. Cr. P. art. 841; State v. Bosley, 29,253 (La.App. 2d Cir.4/2/97), 691 So.2d 347, writ denied, 97-1203 (La.10/17/97), 701 So.2d 1333. However, even if the defendant were entitled to argue the issue, we find that it would still have no merit.
The Sixth Amendment of the United States Constitution and Article I, § 16, of the Louisiana Constitution guarantee an accused in a criminal prosecution the right to be confronted with the witnesses against him. The primary purpose behind this right is to secure for the defendant the opportunity for cross-examination. State v. Hotoph, 99-243 (La.App. 5th Cir.11/10/99), 750 So.2d 1036, writs denied, XXXX-XXXX & XXXX-XXXX (La.6/30/00), 765 So.2d 1062, 1066. Cross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested. State v. Hotoph, supra; State v. Hillard, 398 So.2d 1057 (La. 1981).
The defendant's argument overlooks the fact that Dr. McCormick's testimony was *885 not merely repeating Dr. Cogswell's autopsy report, but was his own expert medical opinion as to the fact that the victim was dead and the cause of his death. The defendant fully cross-examined Dr. McCormick as to his own expert opinion about the cause of the victim's death. The defendant has cited no authority to support his argument that the Crawford case bars a medical expert from rendering his own opinion, based on a review of medical records done by other doctors and health care providers.
A medical expert's opinion is almost always based on some degree of hearsay, given the fact that numerous other medical personnel and records may be involved in the treatment of a patient. The issue is not admissibility, but the weight a fact finder gives to this expert testimony, dependent upon the professional's qualifications and experience, and the facts upon which his opinion is based. Warlick v. Warlick, 27,389 (La.App. 2d Cir.9/29/95), 661 So.2d 706. A defendant is protected because La. C.E. art. 704 bars an expert from expressing, ". . . an opinion as to the guilt or innocence of the accused." Likewise, La. C. Cr. P. art. 105 provides, "A coroner's report and a procès verbal of an autopsy shall be competent evidence of death and the cause thereof, but not of any other fact." The record does not reflect Dr. McCormick going beyond these restrictions in his testimony about the cause of death.
As previously noted, a coroner's report is competent evidence of death and the cause of death. La. C. Cr. P. art. 105. It is excepted from the hearsay rule and is admitted in evidence as proof of death and the cause thereof. State v. Kelly, 375 So.2d 1344 (La.1979); State v. Rhodes, 29,207 (La.App. 2d Cir.1/22/97), 688 So.2d 628, writ denied, 97-0753 (La.9/26/97), 701 So.2d 980. The coroner or one of the coroner's deputies may testify as to the victim's death or the cause thereof, even where the testifying witness did not perform the autopsy or prepare the report. State v. Rhodes, supra. The trial court properly admitted the coroner's report pursuant to La. C. Cr. P. art. 105 to prove death and the cause of death, after the coroner was questioned and cross-examined about the results. The defendant articulates no basis for his argument that he was unable to exercise his constitutional right to cross-examine the medical expert testifying about how and why the victim died.
See also State v. Leonard, XXXX-XXXX (La.App. 1st Cir.4/27/05), 915 So.2d 829, 2005 WL 1039635, in which the defendant claimed a Crawford violation because the coroner testified about an autopsy performed by another. Finding that the coroner's report was admissible to prove the cause of death as nontestimonial hearsay and that the coroner's testimony was limited to the contents of the autopsy report, the court found it unnecessary to consider whether the coroner was properly qualified as an expert in his field. The defendant's Crawford claim was dismissed.[2]
This assignment is without merit.

RESPONSIVE VERDICT
The defendant contends that the trial court erred in failing to include the offense *886 of negligent homicide as a responsive verdict.
During the jury instruction conference, the defendant and the state discussed whether attempted manslaughter or negligent homicide should be included as a responsive verdict. Counsel discussed the fact that after the offense, La. C. Cr. P. art. 814(5) was amended to include negligent homicide as a responsive verdict to manslaughter. The state suggested that the amendment was only prospective. The record does not contain any further discussion on the matter or any written jury instructions or objections about it. The jury verdict form did not include negligent homicide as a responsive verdict. The record does not show the defendant objected to this.
In 2003, the legislature amended La. C. Cr. P. art. 814(5) to include negligent homicide as a responsive verdict to manslaughter. Amendments to responsive verdicts are procedural, and the list of responsive verdicts in effect at the time of trial, not the time of the offense, should be used. State v. Martin, 351 So.2d 92 (La. 1977). While the record shows that the state and the defendant's counsel discussed whether or not the amendment was retroactive, it then goes silent on the issue, with no further requests or objections on the matter. La. R.S. 14:32 defines negligent homicide as ". . . the killing of a human being by criminal negligence." Criminal negligence exists when, although neither specific nor general criminal intent is present, there is such disregard of the interest of others that the offender's conduct amounts to a gross deviation below the standard of care expected to be maintained by a reasonably careful man under like circumstances. La. R.S. 14:12.
If the evidence does not reasonably support a verdict, a trial court may exclude an otherwise proper responsive verdict. State v. Wright, 36,635 (La. *887 App. 2d Cir.3/7/03), 840 So.2d 1271; State v. Taylor, 34,096 (La.App. 2d Cir.12/15/00), 774 So.2d 379, writ denied, XXXX-XXXX (La.12/14/01), 803 So.2d 984. A defendant may not be entitled to a negligent homicide jury instruction where there is no evidence that the defendant hit the victim by accident or merely by disregard for the interest of others, and that the actions in beating the victim were deliberate and repeated, continuing after the victim was incapacitated. State v. Patterson, 99-994 (La.App. 5th Cir.1/25/00), 752 So.2d 280, writ denied, XXXX-XXXX (La.2/9/01), 785 So.2d 26. Accordingly, we find that the trial court did not err in failing to give negligent homicide as a responsive verdict.
This assignment of error is without merit.

ENHANCED SENTENCE
The defendant argues the trial court could not use his 1994 conviction for DWI, Third Offense to enhance his sentence in the present conviction. He argues that once the state elected to charge him under the enhanced penalty provision of the DWI law, it could not then "double enhance" by filing a multiple offender bill of information against him in the present conviction, since the DWI law already provides for an enhancement.
La. R.S. 15:529.1 refers generally to "a felony." It contains no restriction as to the type of felony. State v. Murray, 357 So.2d 1121 (La.1978), overruled on other grounds, State v. Skipper, 2004-2137 (La.6/29/05), 906 So.2d 399. The defendant's argument that the state is trying to improperly enhance the penalty as a second felony offender because the first felony conviction had already been enhanced is without merit. The 1994 conviction for DWI, Third Offense is "a felony" under the Habitual Offender Act. It can be used to support the defendant's status as a second felony offender. See State v. Iverson, 37,369 (La.App. 2d Cir.9/24/03), 855 So.2d 835, writ denied, 2003-2950 (La.5/14/04), 872 So.2d 510. The defendant has shown no reason why the state cannot use the felony DWI conviction to enhance the penalty for manslaughter, since it is not being used twice to enhance the DWI penalty. It would only have, if the defendant, for example, had instead been convicted of a DWI, Fourth Offense, and the state had wanted to use the Habitual Offender Act to further enhance the DWI, Fourth Offense penalties.
This assignment of error is meritless.

ERROR PATENT
The trial court imposed the defendant's sentence without benefit of "parole, probation or suspension of sentence." However, the defendant was sentenced as a second felony offender under La. R.S. 15:529.1. Under La. R.S. 15:529.1(G), such a sentence is to be imposed "without benefit of probation or suspension of sentence." La. R.S. 14:31 does not require the imposition of a manslaughter sentence without benefit of parole. Accordingly, we amend the defendant's sentence to delete the restriction on parole eligibility.

CONCLUSION
The defendant's conviction is affirmed. His sentence is amended to delete the restriction on parole eligibility.
REHEARING GRANTED; CONVICTION AFFIRMED; SENTENCE AMENDED AND, AS AMENDED, AFFIRMED.
STEWART, J., dissents for reasons assigned in the original opinion.
MOORE, J., dissents for reasons assigned in his original concurrence.
NOTES
[1] Although the state makes this argument, it requested that the trial court instruct the jury on homicidal self-defense. Despite this request, the trial court instructed the jury in a manner that we consider to be confusing on the issue of burden of proof. The state failed to object to this improper jury instruction at the time of trial.
[1] In Crawford, supra, the criminal defendant's wife had made a taped statement to the police indicating that the crime was not committed in self-defense. The wife did not testify at trial because of the marital privilege. The state introduced her statement after the trial court ruled that it bore "particularized guarantees of trustworthiness." The U.S. Supreme Court found the state's use of this statement violated the Confrontation Clause, noting that where testimonial statements are at issue, the only indication of reliability sufficient to satisfy constitutional demands is confrontation.
[2] A handful of courts in other states have considered Crawford claims as to autopsy reports.

In People v. Durio, 7 Misc.3d 729, 794 N.Y.S.2d 863 (N.Y.Sup.2005), the autopsy report was admitted at trial as a business record. The testifying pathologist had not conducted the autopsy. He was qualified as an expert witness and testified about the report findings and, using the report as a reference, rendered an opinion as to the cause of death. The court found that the admission of the routine findings recited in the autopsy report were not testimonial and the accompanying testimony of the assistant medical examiner who had not authored the report was proper.
In Moreno Denoso v. State, 156 S.W.3d 166 (Tex.App.2005), the pathologist who had performed the autopsy report had died and a certified copy of the autopsy report was admitted into evidence. Because the autopsy report was nontestimonial in nature, the new Crawford rule was deemed inapplicable. Additionally, the court concluded that even if the introduction of the report was error, it was harmless error.
In Smith v. State, 898 So.2d 907 (Ala.Crim. App.2004), the defendant objected to admission of the autopsy evidence because the pathologist, who had left the medical examiner's office and entered private practice, was available. The trial court permitted the State to present the evidence without the testimony of the medical examiner who performed the autopsy. The interim medical examiner testified that the records had not been tampered with, that he had discussed the case with the pathologist who conducted the autopsy, and that he agreed with the autopsy report findings. Another forensic pathologist who had reviewed the autopsy materials testified that he likewise agreed with the autopsy report's conclusion. The appellate court found that while admission of the evidence violated the Confrontation Clause under the particular facts of this case, the error was harmless because the evidence overwhelmingly supported the manslaughter conviction even without the autopsy report.
In Perkins v. State, 897 So.2d 457 (Ala. Crim.App.2004), rendered the same day as Smith v. State, supra, the defendant complained that the trial court erred in admitting into evidence an autopsy report prepared by a now retired pathologist and by allowing the forensic technician who assisted in the autopsy to testify as to conclusions and opinions based on the autopsy report. Another pathologist testified that the autopsy report was a business record and that after reviewing the materials he agreed with the report's conclusions. The appellate court found that the autopsy report was nontestimonial evidence. However, even if its admission was error, such error was harmless because the evidence presented by the state was sufficient to convict even without the autopsy report.