LOLLEY, J.
 

 I,This criminal appeal arises from the First Judicial District Court, Parish of Caddo, State of Louisiana. Following a bench trial, the defendant, Louis Tyrone McKeaver, was convicted of manslaughter, a violation of La. R.S. 14:31. After being adjudicated a second felony offender, he was sentenced to 36 years’ imprisonment at hard labor without the benefit of parole, probation or suspension of sentence, which McKeaver appeals. For the following reasons, we affirm McKeaver’s conviction and amend his sentence to delete the restriction on the parole eligibility. In all other respects, his sentence is affirmed.
 

 Facts
 

 In the early morning hours of February 7, 2005, McKeaver, stabbed 43-year-old Cynthia Breda, his sometimes-girlfriend, four times-including one fatal wound to the left chest which incised her heart. The additional stab wounds were to Breda’s wrist, upper arm and left back.
 

 McKeaver was indicted by a grand jury, with one count of second degree murder and was tried before a judge on August 24 and 25, 2006. McKeaver took the stand at his trial, testifying that he and the victim had argued just before the stabbing and that she had run him out of her house. He testified that he believed Breda had gone to get her gun to shoot him so, fearing for his life, he grabbed a large butcher knife out of his car (he claimed he used the knife to start his vehicle). McKeaver claimed that when Breda came out of her house
 
 *911
 
 “trying to get full control of the gun,” he approached her and stabbed her multiple times with the first wound being the one “in her heart.”
 

 12Breda’s daughter, Chinitra Pennington, also testified at MeKeaver’s trial. Pennington, who lived next door, was asleep on the couch at the time the crime occurred. She testified that she heard a voice she recognized as McKeaver’s scream an expletive, which prompted her to go outside to see what was going on. After stepping out onto her front porch, she did not see anything and turned to go back inside. Deciding instead to check on her mother, Pennington turned back around, went down the front steps into the front yard and found her mother lying on the ground with blood on her shirt and running down her leg. Pennington saw McKeaver walking down the street away from the scene, and testified that he briefly stopped and looked back in her direction, then continued walking away from the scene. Pennington called 911 and waited for the emergency personnel to arrive. Pennington testified that while her mother owned a .25 caliber gun, Pennington did not see it or any other gun on or around her mother at the scene. According to Pennington, on the evening of the stabbing, her mother was not in possession of the gun because she had left it at a friend’s house.
 

 Corporal Robert Elliott with the Shreveport Police Department also testified at McKeaver’s trial. According to Corp. Elliott, he was patrolling the neighborhood in the early morning hours of February 7, 2005, in response to a BOLO (be on the lookout) put out on police radio for a black male named Tyrone McKeaver wearing a white T-shirt and black pants. Corporal Elliott spotted a man fitting McKeaver’s description step out from behind a house near Evers Drive and Broadway Avenue. The man was wearing black pants and a white T-shirt that appeared to be bloodstained. 1,,Corporal Elliott exited his patrol unit and yelled “Tyrone” at the suspect, who turned to look at the officer and stopped right by the side of the road. Corporal Elliott then conducted a search of the suspect and placed him in handcuffs. As he did so, people began coming out of nearby homes to whom the suspect, according to Corp. Elliott, made the following statement, “She said she was going to get a gun, so I got her first.”
 

 Corporal Elliott testified that McKeaver was subsequently read his Miranda rights and transported to the Shreveport Police Department. The state introduced a videotape from the recording system in Corporal Elliott’s patrol unit which he identified as accurately depicting the events that transpired during McKeaver’s arrest. The audio portion is difficult to understand because numerous voices can be heard speaking simultaneously. Clearly discernible at one point, however, one voice can be heard to say the following: “I kilt [sic] her, momma. She was gonna try to get a (unintelligible) to kill me with, so I got her first. I got her first man. I got her first man. I got her first. God knows.”
 

 At McKeaver’s trial, various law enforcement officials responsible for securing the scene in and around Breda’s home testified that no gun was found in or around the victim’s body or in her home. The medical personnel who unsuccessfully attended to Breda also testified that they saw no gun on or around the victim’s body.
 

 The trial court found McKeaver guilty of manslaughter. The state then filed a habitual offender bill charging McKeaver as a second-felony offender on the basis of his May 7, 1996, conviction for possession of a | .[firearm by a convicted felon. Following a hearing, McKeaver was adjudicated a second felony offender. That same day, a
 
 *912
 
 sentencing hearing was conducted during which McKeaver took the stand and testified that he had no choice but to act as he did because of his belief that Breda possessed a gun. The trial court imposed a sentence of 36 years’ imprisonment at hard labor without the benefit of parole, probation or suspension of sentence. A motion to reconsider the sentence as excessive was denied without a hearing. Subsequently, McKeaver filed an application for post-conviction relief seeking an out-of-time appeal, which the trial court granted. This appeal by McKeaver ensued.
 

 Discussion
 

 In his first assignment of error, McKeaver argues that the sentence imposed is excessive, because the trial court failed to give proper weight to Breda’s alleged possession of a gun at the time of her stabbing and the role that played in his state of mind as a mitigating factor. He also argues that the trial court failed to particularize the sentence to the offender. We disagree.
 

 Under La. R.S. 14:31, the underlying manslaughter conviction subjected McKeaver to a term of up to 40 years. As a second habitual offender, La. R.S. 15:529.1(A)(l)(a) subjected him to a term not less than one half the maximum nor more than twice the maximum for the underlying conviction, or from 20 to 80 years.
 

 The test imposed by the reviewing court in determining the excessiveness of a sentence is two-pronged. First, the record must show |fithat the trial court took cognizance of the criteria set forth in La. C. Cr. P. art. 894.1. The trial judge is not required to list every aggravating or mitigating circumstance so long as the record reflects that he adequately considered the guidelines of the article.
 
 State v. Smith,
 
 433 So.2d 688 (La.1983);
 
 State v. Lathan,
 
 41,855 (La.App.2d Cir.02/28/07), 953 So.2d 890,
 
 writ denied,
 
 2007-0805 (La.03/28/08), 978 So.2d 297. The articulation of the factual basis for a sentence is the goal of La. C. Cr. P. art. 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with La. C. Cr. P. art. 894.1.
 
 State v. Lanclos,
 
 419 So.2d 475 (La.1982);
 
 State v. Swayzer,
 
 43,350 (La.App.2d Cir.08/13/08), 989 So.2d 267. The important elements which should be considered are the defendant’s personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of offense and the likelihood of rehabilitation.
 
 State v. Jones,
 
 398 So.2d 1049 (La.1981);
 
 State v. Ates,
 
 43,327 (La.App.2d Cir.08/13/08), 989 So.2d 259,
 
 writ denied,
 
 2008-2341 (La.05/15/09), 8 So.3d 581. There is no requirement that specific matters be given any particular weight at sentencing.
 
 State v. Shumaker,
 
 41,547 (La.App.2d Cir.12/13/06), 945 So.2d 277,
 
 writ denied,
 
 2007-0144 (La.09/28/07), 964 So.2d 351.
 

 Second, a sentence violates La.Const. art. 1, § 20 if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering.
 
 State v. Smith,
 
 2001-2574 (La.01/14/03), 839 So.2d 1;
 
 State v. Dorthey,
 
 623 So.2d 1276 (La.1993);
 
 State v. Bonanno,
 
 384 So.2d 355 (La.1980). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice.
 
 State v. Weaver,
 
 2001-0467 (La.01/15/02), 805 So.2d 166;
 
 State v. Robinson,
 
 40,983 (La.App.2d Cir.01/24/07), 948 So.2d 379.
 

 
 *913
 
 Louisiana C. Cr. P. art. 881.1 precludes the defendant from presenting sentencing arguments to the court of appeal which were not presented to the trial court. In such a circumstance, the defendant is simply relegated to having the appellate court consider the bare claim of constitutional excessiveness.
 
 State v. Mims,
 
 619 So.2d 1059 (La.1993);
 
 State v. Masters,
 
 37,967 (La.App.2d Cir.12/17/03), 862 So.2d 1121. Here, the state argues that McKeaver is relegated to a bare claim of constitutional excessiveness because he failed to raise the improper weighing of mitigating factors argument in his motion to reconsider sentence filed with the trial court. However, we do not read the motion to reconsider so narrowly. In the motion to reconsider, McKeaver makes the following allegation: “Given the mitigating circumstances of this particular offense, the remorse shown by Defendant, and the reasons indicated by this Court, said sentence is unduly harsh and excessive.” Accordingly, while McKeaver may not have made specific mention of the evidence regarding the victim being armed, his allegation that she was armed would clearly qualify as a mitigating factor of the offense which he was urging had not been given proper consideration.
 

 17As to the merits of this assignment of error, we find that McKeaver’s argument is weak and his claim is unsupported by the record on this issue. McKeaver brutally stabbed his victim with a butcher knife with enough force to pierce her sternum and puncture her heart. Then, according to his own testimony, he stabbed her an additional three times, including once in the back. While McKeaver argues that he was forced to murder Breda because she had a gun, the trial court properly noted that under McKeaver’s own version of the events, if true, he had ample opportunity to remove himself from the situation when he was forced out of the home. He did not do so, choosing instead to walk to his car, arm himself with his butcher knife, await the victim outside her home and then brutally stab her with enough force as to kill her. While the trial court considered McKeaver’s remorse as a mitigating circumstance, the record reflects that he fails to actually take responsibility for his conduct, but expressed remorse only for how things turned out. Remorse for committing a crime and being caught is far different from actual and meaningful contrition for one’s criminal actions.
 

 Additionally, McKeaver’s crime was committed while he was on parole from an earlier conviction of possession of a firearm by a convicted felon, a conviction stemming from an incident in which he allegedly shot his aunt and was originally charged with attempted second degree murder. It is unclear to what extent the trial court considered the underlying facts of | Sthis conviction since they were never made part of the evidence before the trial court, although they are in police reports contained in the record in the form of discovery responses. Regardless, the criminal history shows a propensity for violence on the part of this defendant, the latest victim of which is dead.
 

 Finally, McKeaver’s sentencing exposure was no less than 20 years’ nor more than 80 years’ imprisonment at hard labor. Accordingly, the 36-year sentence imposed is less than half the maximum he could have received. In imposing the sentence, the trial court noted that it had considered the factors of La. C. Cr. P. art. 894.1 and found McKeaver’s use of a knife to inflict multiple stab wounds on the victim, his failure to seize the opportunity to remove himself from the situation, and the impact on the victim’s family as aggravating circumstances. The trial court also indicated
 
 *914
 
 that McKeaver’s prior conviction on a weapons charge made a probated sentence, even if available, inappropriate. As mitigating factors, the trial court cited the evidence of alcohol and cocaine in Breda’s bloodstream and the trial court’s belief that there may have been provocation for McKeaver’s actions. Given the trial court’s considerations in fashioning McKeaver’s sentence, the midrange sentence is not grossly disproportionate to the seriousness of the crime nor does it shock one’s sense of justice. Accordingly, McKeaver’s assignment of error is without merit.
 

 In his second assignment of error, McKeaver argues that the trial court erred in imposing his sentence without the eligibility for parole. The state agrees.
 

 |ftAt the time of the commission of the offense, La. R.S. 14:31(B) provided, in pertinent part, as follows: “Whoever commits manslaughter shall be imprisoned at hard labor for not more than forty years.” Since McKeaver was charged as a second felony habitual offender, also applicable in this instance is La. R.S. 15:529.1(A)(l)(a) and (G), which states:
 

 (a) If the second felony is such that upon a first conviction the offender would be punishable by imprisonment for any term less than his natural life, then the sentence to imprisonment shall be for a determinate term not less than one-half the longest term and not more than twice the longest term prescribed for a first conviction;
 

 ⅜ * * *
 

 (G) Any sentence imposed under the provisions of this Section shall be without the benefit of probation or suspension of sentence.
 

 Here, the trial court imposed McKeaver’s 36-year-sentence “without the benefit of probation, parole, or suspension of sentence as contemplated by the second felony offender statute.” However, the second felony habitual offender statute does not prohibit eligibility for parole, thus McKeaver’s sentence was illegal in regard to the trial court’s denial. Under La. C. Cr. P. art. 882, this court has the authority to amend the erroneous sentence, making all necessary corrections to make the sentence legal. The defendant’s sentence, therefore, is amended to delete that portion which denies him eligibility for parole.
 
 State v. Garner,
 
 39,731 (La.App. 2d Cir.09/08/05), 913 So.2d 874,
 
 writ denied,
 
 2005-2567 (La.05/26/06), 930 So.2d 19.
 

 | ^Conclusion
 

 For the foregoing reasons, Louis Tyrone McKeaver’s conviction is affirmed, his sentence is amended to delete the restriction on parole eligibility and is affirmed, as amended.
 

 CONVICTION AFFIRMED; SENTENCE AMENDED AND, AS AMENDED, AFFIRMED.